# CHARLESTON

HORSE CREEK COAL LAND CO. v. TREES *et al.*

Submitted January 20, 1915.    Decided February 2, 1915.

1. QUIETING TITLE—*Removal of Cloud—Possession—Pleading and Proof.*

   To confer jurisdiction in equity to remove cloud from legal title to leased premises, averment and proof of possession by plaintiff are indispensable. (p. 561).

2. MINES AND MINERALS—*Lease—Lessor—Right to Equitable Relief.*

   Equity will deny relief, at the suit of a lessor, based on locations for operations elsewhere than as prescribed by the lease, where, with knowledge thereof, he accepts, without complaint, his share of the productions therefrom. (p. 561).

3. SAME—*Oil Lease—Forfeiture—Enforcement.*

   Equity will not enforce a forfeiture. It will not divest a vested estate by enforcing a forfeiture for the breach of a subsequent condition. In such case the party is left to his legal remedy. (p. 561).

Appeal from Circuit Court, Lincoln County.

Suit by the Horse Creek Coal Land Company against Joseph C. Trees and others. From decree for plaintiff, defendants appeal.

*Reversed, injunction dissolved, and cause remanded.*

*Chilton, MacCorkle & Chilton, T. S. Clark,* and *R. G. Altizer,* for appellants.

*Watts & Watts* and *Price, Smith, Spilman & Clay,* for appellee.

LYNCH, JUDGE:

To secure reversal of a decree overruling their demurrer, striking their answer from the file, and denying their motion to dissolve an injunction restraining operation of oil and gas wells drilled by them, previously awarded upon the bill of the Horse Creek Coal Land Company alleging noncompliance with the terms of the lease and for that reason praying declaration of the forfeiture thereof and its cancellation

as a cloud on plaintiff's title to the demised premises, the defendants, John C. Trees as lessee, and the United Fuel Gas Company as his assignee, obtained this appeal.

The duration prescribed for exercise of the rights conferred by the lease was "two years from its date and as much longer as gas or oil is produced from the leased premises in paying quantities." No bonus or rental for delay in testing the lands for oil and gas was required by the contract. It did, however, provide for speedy commencement and diligent prosecution of drilling operations, specifying the time for drilling the requisite number of wells to "develop the leased premises while oil can be gotten in paying quantities", and for forfeiture for neglect or refusal to perform the terms and conditions so prescribed. The compensation fixed was one-fourth of all oil produced and saved, delivered into tanks or pipe-lines to the credit of the lessor, and $250 per annum in advance for each gas well so long as the gas be marketed therefrom.

Under the permission granted, Trees, the original lessee, assigned the gas rights to the Hope Natural Gas Company, which reassigned them to the United States Gas Company. Trees, or one of the companies holding under him, drilled four wells on the lands. In two of them gas in paying quantities was discovered, but not utilized because, according to the contention of defendants, there was no market available or accessible for such production, the lands being remote from any locality affording an opportunity for its consumption at that time. Hence, the wells were "plugged" to hold the gas in storage for future use; but plaintiff was paid or tendered the compensation therefor pursuant to the requirements of the lease. The third well produced neither oil nor gas, the fourth oil in small but not in paying quantities, the bill alleging its initial capacity as twenty barrels per day but thereafter only about three barrels, the answer of defendants replying that such production at no time exceeded three barrels for the same period of time. Except as noted, these facts are virtually conceded to be true.

To the bill, specifically alleging the terms and conditions of the lease and the particulars as to noncompliance therewith, appellants demurred for want of requisite averments

to confer jurisdiction in equity to cancel the lease as a cloud on plaintiff's title because complainant did not allege possession on its part, or to declare and enforce a forfeiture of the lease contract.

As to the first ground, it may be said, without argument, that, according to the well settled rule, enforced by numerous decisions of this and other states, the averment of possession in a plaintiff who seeks removal of cloud from title is an essential prerequisite to the maintenance of a bill for that purpose. Only in case he has such possession is a plaintiff permitted to resort for such relief to an equitable proceeding. Otherwise, he must avail himself of the complete and adequate remedy afforded either by an action of unlawful entry and detainer if brought within the limitation prescribed by statute, or then or thereafter by process of ejectment. And to avail him the possession must be actual, not merely such as follows in the wake of the legal title. *Moore* v. *McNutt,* 41 W. Va. 695; *Christian* v. *Vance,* 41 W. Va. 754; *Sansom* v. *Blankenship,* 53 W. Va. 411; *Poling* v. *Poling,* 61 W. Va. 83; *Kellar* v. *Craig,* 126 Ded. 630.

And, as to the second ground, it may be observed, the law is equally well established by similar authority. Indeed, the real foundation of equitable jurisdiction was based in a large measure on the necessity for relief against the rigid and harsh rules as to forfeiture applied and enforced by courts of the common law as distinguished from courts of equity. So that it is now a common and trite legal maxim that, while equity will relieve against forfeiture, it will not enforce one. On this subject our decisions are uniform and consistent. *Craig* v. *Hukill,* 37 W. Va. 520; *Railroad Co.* v. *Triadelphia,* 60 W. Va. 520; *Spies* v. *Railroad Co.,* 60 W. Va. 389; *Headley* v. *Hoopengarner,* 60 W. Va. 646; *Pheasant* v. *Hanna,* 63 W. Va. 613; *Adams* v. *Railway Co.,* 64 W. Va. 188; *Newton* v. *Kemper,* 66 W. Va. 130.

Nor, when analyzed in view of the facts upon which they are based, do the authorities cited and relied on by the learned counsel for plaintiff impinge upon or contravene the rule applicable and applied to the facts now under review. On the contrary, they are concordant, not at variance. Between them there is no conflict. They are harmonious, and announce

the same doctrine. The facts only are dissimilar. To differentiate them from the facts of this case would unduly prolong this discussion, without serving any useful purpose. We note the difference in a few of them.

*Hukill* v. *Guffey,* 34 W. Va. 49, was an action of unlawful entry and detainer, based on a forfeiture for failure to operate for oil and gas within the prescribed period, the lease in terms assigning as cause therefor a breach of the covenant to drill within ninety days from its date. *Steelsmith* v. *Gartlan,* 45 W. Va. 27, *Oil Co.* v. *Gas Co.,* 51 W. Va. 583, and *Oil Co.* v. *Oil Co.,* 53 W. Va. 501, were suits in equity, in which relief was sought and granted on the ground of abandonment by the lessees of operations under the leases.

In *Starn* v. *Huffman,* 62 W. Va. 422, we said that after the lapse of two years and three months, no mining having been done, equity will cancel a coal lease for failure to operate. The lease there cancelled expressly required the immediate beginning of active operations, and fixed one year as the duration of its term.

While *Brewster* v. *Zinc Co.,* 140 Fed. 801, cited, declares "there is no insuperable objection to the enforcemnt of a forfeiture in a court of equity when that is more consonant with the principles of right, justice and morality than to withhold equitable relief", it adds that "a suit the primary and only purpose of which is to establish a forfeiture as matter of record, and to cancel the thing forfeited. in this instance a lease, is a suit to give effect to and therefore in aid of the enforcement of a forfeiture; and the equity which it presents must be strong enough to overcome the general indisposition of courts of chancery towards granting such relief". The gravamen of Brewster's complaint was drainage of oil from his premises through wells on contiguous lands, and it was therefore based on actual and permanent injury to his proprietary rights, occasioned by failure of the lessee to protect his lands from drainage. But the relief here sought has no such substantial basis. Plaintiff's oil and gas remain in its lands. Its only complaint is that the lessee has not brought to the surface and delivered to it these valuable mineral products as rapidly as demanded by the explicit requirements of the lease. Besides, the principles of the

Brewster case, as to enforcement of forfeitures, do not accord with the views expresed by this court in *Hukill* v. *Craig,* 37 W. Va. 520.

In *Jennings* v. *Carbon Co.,* 80 S. E. 368, the bill charged fraudulent drainage of oil from plaintiff's lands, admitted by defendants' demurrer, which we overruled upon remanding the cause. *Chandler* v. *French,* 81 S. E. 825, did not involve a forfeiture. The lessee did nothing towards compliance with his contract for an unreasonable length of time; and we said in a coal lease "there is an implied covenant by the lessee to begin mining within a reasonable time, and, if he does not do so, he will be presumed to have abandoned his right, and a court of equity will, at the suit of the lessor, cancel the lease as constituting a cloud upon his title".

Upon the facts stated and authorities cited and analyzed, can we say enforcement of the forfeiture urged by appellee, and virtually granted by the decree below overruling the motion of appellants to dissolve the injunction and striking out their answer, actually established that degree of justice and fairness which courts of equity are required to administer as between litigants? To that inquiry we feel constrained to return a negative reply, based in part on *Hukill* v. *Myers,* 36 W. Va. 639, and *Oil Co.* v. *Coulehan,* 65 W. Va. 531.

Conceding failure by the lessees to exercise the best available judgment in the location and continuity of operations for oil and gas, there is no allegation or evidence of a fraudulent refusal to comply with the terms of the lease, or to respond to the repeated and urgent demands for the additional expenditure of their moneys in continuous developments. So far as oil or gas has been found, they have paid or tendered appellee its share of the proceeds arising from such productions as have resulted from their activities. They have not wasted any oil. The bill does not charge waste. They have drilled four wells, at considerable cost to themselves alone. Out of three wells they have derived no adequate return upon their investment, and will not derive any such return from two of them. Considering these expenditures on one hand, and no outlays on the other, does justice demand a virtual ejection of defendants from the leased

premises and an appropriation of their investments for operation and their equipment and appliances to the sole and exclusive use and benefit of the appellee? Plainly, what has been said shows that result to be unwarranted. The leased lands were located in a new, untried and undeveloped oil and gas territory, many miles from a readily available market for the product chiefly developed from them. If they contain oil, it has not been destroyed or diminished. It remains intact. When produced, appellee will receive its due proportion. Though it has not obtained the desired revenues as promptly as anticipated, it had and has other remedies to which it may resort under reasonable limitations. Where by an enforced forfeiture gross injustice would result to either party to the act or contract, equity will even interfere and grant relief against such enforcement. *Hukill* v. *Myers, supra; Oil Co.* v. *Coulehan, supra.*

Again, conceding that because of the interpolation of the terms and conditions as to the location and drilling of wells between the largest and the two smaller tracts as indicative of an intent to limit the earlier operations to the first tract, as appellee insists, it knew that contrary to these provisions the lessee began his tests on the smaller tracts, and, so knowing, it made no complaint until long after their completion with the result noted. Virtual acquiescence in such deflection from the contract, interpreted as appellee contends, will operate as a waiver of strict compliance with such terms.

What has been said sufficiently suggests the ultimate conclusion that the decree must be reversed because erroneous, the injunction dissolved, and the cause remanded with direction to sustain defendants' demurrer to the bill, with leave to amend should appellee be so advised, and, if not, to dismiss it, and for further proceedings therein in conformity with the principles herein announced and otherwise according to the rules governing courts of equity.

*Reversed, injunction dissolved, and cause remanded.*