# CHARLESTON.

PEARL G. MALCOLM *et al. v.* CAROLINE H. TALLEY.

Submitted October 4, 1921.    Decided November 15, 1921.

1. APPEAL AND ERROR—*Trial Court's Fnding on Conflicting Evidence Sustained.*

   Sustained by facts and circumstances making probability of its correctness so strong that the contrary thereof cannot reasonably be supposed, the finding of a trial court, upon an issue as to which the oral evidence is in irreconcilable conflict, will not be disturbed by the appellate court.    (p. 534).

2. WITNESSES—*Grantor is Competent to Testify to Agreement with Grantee and Her Deceased Husband, Who Paid the Purchase Money.*

   In a suit against the grantee in a deed, for correction of an error therein, the grantor is competent to testify to the agreement with the grantee and her deceased husband, in

pursuance of which the deed was made, notwithstanding payment of the purchase money by the husband and his participation in the transaction. (p. 534).

3.  REFORMATION OF INSTRUMENTS—*In Suit to Reform Deed, Plaintiff Will Not be Denied Relief for Merely Constructive Fraud in Stating the Quantity.*

If, in such suit, it is ascertained and determined that, by mutual mistake in the execution, delivery and acceptance of such deed, land was included, which the vendors did not intend to sell nor the vendee to buy, relief will not be denied the plaintiffs because the bill or the evidence discloses an actual or possible liability on the part of the vendors in favor of the vendee, for compensation for injury occasioned by a false representation as to the quantity of the land actually sold and intended to be conveyed, amounting to a merely constructive fraud. (p. 534).

4.  EQUITY—*In Favor of Defendant Calling for Denial of Relief to Plaintiff, Upon His Failure to Accord it, must be Embraced in the Particular Cause of Action.*

An equity in favor of the defendant, calling for denial of relief to the plaintiff, on his failure to accord it, must be embraced in and a part of the particular cause of action constituting the basis of the relief to which the plaintiff is conditionally entitled, not one arising out of a different or collateral cause of action, even though both causes of action emanated from the same transaction. (p. 534).

Appeal from Circuit Court, Cabell County.

Suit by Pearl G. Malcolm and others against Caroline H. Talley, and from the decree therein, the defendant appeals.

*Affirmed.*

*Wm. R. Thompson,* for appellant.
*W. W. Smith,* for appellees.

POFFENBARGER, JUDGE:

By way of reformation of a deed conveying a city lot, upon the theory of a mutual mistake in the execution thereof, the appellants were required by the decree now under review, to reconvey to the grantors a strip of land one and one-half feet wide and 200 feet long, and they complain of it.

The facts as alleged in the bill and found by the court are

substantially as follows:    For and in consideration of $7,-
200.00 paid in cash, the plaintiffs conveyed to the defendant
a city lot on which there was a brick dwelling house,    de-
scribing it as being Lot No. 20 of Block   No. 14 and the
westerly two and one-half feet of Lot No. 19 of Block No. 14,
fronting together 32½ feet, on Fifth Avenue of the City of
Huntington.    What the parties had actually agreed upon
was a sale and conveyance of the lot in   accordance with
monuments which made the frontage only 31 feet.    The de-
termining monument was the center of a concrete walk be-
tween the house sold and another retained by the grantors, to
be used by both owners for access to the basements and back ·
yards of their houses.    Under the impression that the con-
tractors, in constructing the two houses, had so placed them
that a line drawn along the center of the walk would put two
and one-half feet of Lot No. 19 into Lot No. 20, the vendors
informed the vendee that the ground they were selling would
be limited and bounded on the East by a line drawn along the
center of the walk and extended to the avenue and the alley
in the rear, and that, as so sold, the property would include
Lot No. 20 and two and a half feet of Lot No. 19.    The
deed was executed and delivered in exchange for the pur-
chase money, upon that theory and with that understanding.
It was soon discovered, however, that the contractor had not
located the buildings as directed, that the line agreed upon
would take only one foot out of Lot No. 19, and that the deed
had passed all of the walk between the two houses and car-
ried land right up to the wall of the house on Lot No. 19 and ·
under the eaves thereof and portions of the chimneys built
partly on the outside of the wall.    Refusal on the part of
the grantee, to reconvey the portion of Lot No. 19, not sold
nor intended to be conveyed, was followed by this suit for
reformation of the deed.

   There was no actual fraud on the part of the vendors, in
the transaction, but, on well settled principles, their false
representation, if prejudicial to the vendee, amounted to a
fraud in law, for they could not rightfully make it without
knowledge as to its correctness, and having so made it, the
vendee is entitled to compensation for the injury occasioned

thereby, if it was of such character as entitled her to rely upon it as an inducement to the purchase and she did so. *Crislip* v. *Cain,* 19 W. Va., 438. Hence, it constitutes no obstacle to right in the vendors to have reformation of the deed so as to correct the mistake in it, even though, treated as a false representation as to the area of the land, it may constitute the basis of a cause of action on the part of the vendee.

The evidence is highly conflicting as to whether the center of the walk was agreed upon as the line, but we are of the opinion that neither the vendors nor the vendee could have intended the consequences resulting from the deed as executed and delivered. The vendee, her husband and her daughter all inspected the property before the contract was made or the deed delivered. It is highly improbable that they thought they were buying the projection and chimneys of the adjoining house and cutting off access to its basement and back yard. Mrs. Malcolm testified that she had taken them to the walk and pointed it out as the limit of their purchase. While they deny this strenuously, they saw the relation and arrangement of the two houses, and it cannot well be supposed or even imagined that they thought, in dealing for one house, they were seriously impairing another and actually buying part of it.

The evidence of Mrs. Malcolm, upon which this finding is based, is objected to as being testimony to a personal transaction between her and a deceased person, the husband of Mrs. Talley, who took the contract of purchase, paid the purchase money and caused the deed to be made to his wife and is now dead. This objection is obviously untenable, because neither of the parties to this controversy claims title under the deceased husband. Mrs. Talley claims under her deed and by purchase from Mrs. Malcolm. The husband's payment of the purchase money was a gift of money to her, which is in no way involved.

Our conclusion as to what was actually sold and intended to be conveyed, and the existence of a mistake in the deed, would affirm the decree, but for the suggestion that reformation cannot be had except upon condition of payment by the plaintiffs, of compensation for the foot and a half of

ground falsely represented as being included in the land actually sold.    That cause of action, if it exists, has not been asserted in this suit by any pleading of any kind.    The only issues made by any of the pleadings pertain to the existence of the mistake and mutuality thereof.    Some of the evidence adduced goes beyond them and tends to prove right of compensation in the vendee, but she has not asked it nor sought it in any way.    As it and the cause of action set up in the bill grew out of the same transaction, no doubt it could have been set up by way of a demand for cross-relief.

But it is not such an equity as bars relief to the plaintiffs, conditionally, under the well known maxim invoked, which does not extend to every case in which a defendant may have relief by a cross-bill.    Its applicability depends upon the character of the defendant's equity or legal right which must in some form amount to a charge upon, or equity against, the particular demand set up in the bill, or a covenant or condition limiting it.    If a mortgagor wants to redeem, or to cancel the mortgage, he must pay the mortgage debt, the right to which is embodied right in the instrument from which he seeks to be relieved.    A taxpayer seeking to enjoin a tax, part of which is valid and part invalid, must pay the valid part.    A creditor seeking reformation of a deed of trust or mortgage to secure his debt, by inclusion of property inadvertently omitted, must pay back or credit on the debt usurious interest he has received, because the right to such payment or credit is inevitably involved in the ascertainment of the amount of the debt sought to be made a lien on the omitted property by reformation.    An owner of land seeking cancellation of a void tax deed must offer to reimburse the purchaser for the purchase money and taxes paid by him, because the statute governing the subject makes such offer a condition of the relief sought.    A plaintiff seeking an accounting in equity must allow all mutual credits shown to be due the defendant.    In a bill by which the plaintiff seeks an interest in property the legal title or possession of which is held by the defendant, on the theory of a trust in his favor, must pay all proper charges against the interest he seeks to obtain.    In all of these instances of the application of the

maxim and every other in which it has been properly applied, the defendant's right, whether legal or equitable, is part and parcel of the specific cause of action asserted by the plaintiff or necessarily involved in it.     Upon analysis, they are all found to be inseparable or reciprocal rights embodied in the same cause of action, not rights involved in separate or clearly separable causes of action.

Defining this rule, Vice-Chancellor Wigram said in *Hanson* v. *Keating*, 4 Hare. 1, "It decides in the abstract that the Court giving the Plaintiff the relief to which he is entitled will do so only upon the terms of his submitting to give the Defendant such corresponding rights (if any) as he also may be entitled to in respect of the subject matter of the suit." Illustrating it, he observed: "If, for example, a Plaintiff seeks an account against the Defendant, the Court will require the Plaintiff to do equity by submitting himself to account in the same matter in which he asks an account; the reason of which is that the Court does not take accounts partially, and perhaps ineffectually, but requires that the whole subject be, once for all, settled between the parties. It is only (I may observe as a general rule) to the one matter which is the subject of a given suit that the rule applies, and not to distinct matters pending between the same parties." Later in his opinion, he cites *Agabeg* v. *Hartwell* and *Colvin* v. *Hartwell*, 5 Cl. & Fin. 484, (House of Lords), as holding that relief cannot be denied the plaintiff, because it appears that the defendant is entitled to a set-off which he may recover in another action.     This is his clear and concise analysis of that case: "The Vice-Chancellor of England and Lord Brougham, on appeal upon the general ground that he who would have equity must do equity, required the Plaintiff in the latter cause to submit to an account of certain monies he had in his hands, in which the Defendants claimed an interest, as the price of a decree for an account against the defendants; there being no necessary connection between the two accounts.     This decree, therefore, went to the House of Lords under every circumstance of disadvantage. The House of Lords investigated the case with a view to the question whether the defendants were entitled to have the two ac-

counts blended; and being of the opinion that the defendants had no such equity, the decree was reversed." The rule was interpreted in accordance with the view above expressed and here asserted, in *Gibson* v. *Goldsmid,* 5 DeG. M. & G. 757, holding, as stated in the headnotes, that "The rule that he who seeks equity must do equity, is restricted to an equity in respect of the subject matter of the suit. Where therefore in a deed of dissolution of partnership, one partner assigned certain foreign shares (which were recited to be transferable, as it was believed, by delivery), and covenanted for further assurance; and the other partner covenanted to indemnify the former against certain liabilities; and it afterwards appeared that the shares were not transferable by delivery, but required a formal act to complete the assignment: Held, in a specific performance suit instituted by the assignee of the shares, that he was entitled to have the assignment complete, although there might in the meantime have been on his part a failure to perform the covenant of indemnity."

Nothing inconsistent with this interpretation of the rule has been found in any of the hundreds of American decisions involving the principle. The following text from Corpus Juris, p. 174, based upon a great many of them, is well expressed and perfectly harmonizes with it: "The maxim requires that any person seeking the aid of equity shall have accorded, shall offer to accord, or will be required to accord, to the other party all the equitable rights to which the other is entitled in respect to the subject matter. Relief inconsistent with the equities of the adverse party will be denied, and where the granting of relief raises equitable rights in favor of the defendant, the according of such rights will be imposed as a condition of granting the relief." Mark the limitation of the reciprocal equities so protected, to "the subject matter." That means the cause of action set up in the bill, not every cause of action arising out of the transaction or circumstances giving birth to it. The protected equities of the defendant must be embodied in that cause of action, or grow out of it, in some form. Merely collateral relationship to it, of another distinct cause of action arising

out of the same transaction, does not suffice, as precedents above referred to clearly disclose.

The cause of action set up in the bill in this cause is right to reformation of the deed so as to exclude part of the land conveyed by it, but not sold nor intended to be sold. If the defendant has a cause of action against the plaintiff, it is for compensation for injury by wrongful inducement to pay more money for what she did buy, than it was worth or than she otherwise would have paid. This she could recover in an independent suit, either at law or in equity, the cause of action being one of concurrent jurisdiction. These two causes are in no way dependent upon one another. If the deed had been correctly drawn and the false representation made, the defendant would have the same cause of action she now has, if any. That supposed unliquidated liability in her favor is not a lien on the strip she never bought and which the decree excludes from the deed. In no sense, has she a contractual hold upon it, and, in my opinion, the maxim invoked does not give it. If she had spent money in improving the strip in ignorance of the mistake in the deed and in reliance upon its terms, she might have an equity in the subject matter of the bill. If this were a suit for the purchase money, the compensation she is entitled to, if any, would be an equity against the demand set up, the subject matter of the bill, for it would reduce the amount to be recovered. It would be a mutual credit upon the money demand and, so, be necessarily included in that particular cause of action.

Under this interpretation of the maxim, which is manifestly correct, the plaintiffs are not required to pay the defendant compensation for the injury occasioned by the false, representation, as a condition precedent to right to have correction of the mistake in the deed, even if we could see that they are liable for it. Hence, it is immaterial whether the defendant's supposed right appears on the face of the bill or has been revealed in the evidence. Being an independent cause of action, but related because it grew out of the transaction giving rise to the other, it probably could have been set up in this cause, and, not having been asserted, it may

be prosecuted in another action, but it constitutes no ground for withholding the relief to which the plaintiffs are entitled.

The cases illustrating the application of the maxim show that the denial of relief under it is necessary to the protection of the defendant.  ˉIn all of them, unconditional award or relief to the plaintiff would forever bar right in the defendant to the equity due him.    That is not true of separable and distinct causes of action, which may or may not be set up by cross-bill, at the will and pleasure of the defendant. If the principle is not limited to the defendant's equity involved in the plaintiff's cause of action, much confusion and even hardship may be result from its application.    To broaden the scope of litigation and make one clear case of relief await determination of a lot of collateral controversies, not even raised by any pleadings, would be decidedly inequitable.

Upon these principles and conclusions, the decree complained of will be affirmed.

<em>Affirmed.</em>