398 S.E.2d 517

**E. SHEPHERDSTOWN DEVELOPERS, INC.**

v.

**J. RUSSELL FRITTS, INC.**

**No. 19604.**

Supreme Court of Appeals of West Virginia.

Oct. 18, 1990.

Michael L. Scales and Cinda L. Scales, Askin, Pill, Scales & Burke, L.C., Martinsburg, for E. Shepherdstown Developers.

Douglas S. Rockwell, Steptoe & Johnson, Charles Town, for J. Russell Fritts, Inc.

NEELY, Chief Justice:

This case is based on a contract by which appellant (hereinafter "plaintiff") contracted to purchase ten acres along with an option for an additional 40 acres. A clause in the contract made the entire purchase and option agreement contingent on the plaintiff's gaining Planning Commission approval of a 90–unit town-house development on the ten-acre parcel. Plaintiff waited forty months before offering to close on the initial 10 acres, and when appellee refused to close, brought suit for specific performance.

Defendant claimed that the contract was unenforceable due to an inadequate description of the land at stake, and that defendant had waited too long before offering to perform his part of the contract. Because the plaintiff sought the equitable remedy of specific performance, the trial court sat as the ultimate trier of fact. The Court did, however, empanel an advisory jury. At the close of plaintiff's case, defendant moved for a directed verdict.

The court dismissed the advisory jury and granted a directed verdict for defendant, deciding that uncertainties concerning the funding of a proposed Charles Town bypass did not constitute contingencies that excused plaintiff's delayed performance of his duties under the contract, and that the delay of forty months on plaintiff's part was unreasonable as a matter of law. The court also held that the contract's description of the land involved was not so 'uncertain as to make the contract unenforceable on statute of frauds grounds.

Plaintiff contends that the trial court's decision on the reasonableness of plaintiff's delay was in error, and defendant cross-assigns as error the trial court's decision on the certainty of the land description. Because we affirm the trial court's decision on the issue of delay, we need not reach the appellee's cross-assignment.

## I.

◼ Plaintiff argues, "[t]he facts and circumstances surrounding the uncertainties of the funding and location of the Charles Town by-pass, and the accesses thereto as they relate to the Contract, are such that would delay or excuse performance for a period of forty (40) months, which delay was reasonable under the circumstances." We cannot agree.

On 23 September 1985, defendant and plaintiff signed an agreement which they called "Real Estate Purchase Contract and Option". Under the agreement, the defendant would sell the ten acre parcel to plaintiff for the sum of $50,000, half to be paid in cash and half in the form of a promissory note. Under the agreement, the defendant also purchased, for the sum of $5,000 [1], a two-year option to buy an adjoining 40–acre tract, the period of the option to begin on the date of closing on the ten acre parcel.

The date of closing was not set in the contract. Paragraph eight of the contract provides:

"This entire agreement, including the Real Estate Purchase Contract and Option is contingent upon the Purchaser's ability to obtain from the Jefferson County Planning Commission for construction of 90 townhome units on the 10 acre parcel hereinabove described and to achieve preliminary plat approval in connection therewith for said 10 acre parcel. In the event that the Purchaser is unable to meet these contingencies by gaining said approval, then all sums paid by the Purchaser to the Seller under this agreement shall be refunded without further claim by either party against the other."

◼ In Syllabus Point 2 of *Hanly v. Watterson*, 39 W.Va. 214, 19 S.E. 536 (1894), this Court stated:

It is the general rule that, where an option to be exercised or a condition to be performed is not limited by the agreement, then such option must be acted upon and condition performed or abandoned within a reasonable time.

However, in the body of its opinion, the Court gave little guidance as to what constitutes "a reasonable time."

"Then the enquiry as to a reasonable time resolves itself into an enquiry as to what, time it is rational to suppose the parties contemplated and the law will decide this to be that time which, as rational men, they ought to have understood each other to have had in mind."

*Id.* 39 W.Va. at 221, 19 S.E. at 538–9. *Black's Law Dictionary* (5th ed.) states the general rule that, "Where contract does not fix a time for performance, the law allows "reasonable time" for performance, defined as such time as is necessary, conveniently, to do what the contract requires to be done, as soon as circumstances will permit." This is precisely the definition of "reasonable time" that rational contracting parties would intend to apply to the performance of a condition precedent by one party.

In the case before us, a reasonable time, then, would be the time it takes, conve-

---

**1.** Whether that sum was actually paid in cash is immaterial, because the contract specifically states that it was paid: "In consideration of the sum of $5,000 cash in hand paid by the Purchaser to the Seller, the receipt of which is hereby acknowledged...."

niently, and considering the particular circumstances, to go through the applications process. The record shows that that time is closer to one year than it is to three years. However, this is not a case where plaintiff applied for approval soon after signing the contract, and then was held up in the application process. In this case, plaintiff waited over three years, until at least January of 1989, before telling the defendant that he wished to perform on the contract. Even then, he had submitted to the planning commission neither a community impact statement nor a preliminary plat[2]. Of course, after learning that defendant felt there existed no enforceable contract between them, plaintiff pursued planning commission approval no further. Three years is so much longer than plaintiff needed to prepare and submit an application that the delay can be said to be unreasonable as a matter of law.

■ Yet, plaintiff claims that it would have been futile to apply for planning commission approval for its town-house project on the ten acres until the uncertainties regarding the Charles Town bypass were cleared up. It is not apparent from the record that plaintiff's claim is true[3]. However desirable, from plaintiff's standpoint, it might have been to wait until the by-pass route was definitely decided, plaintiff did not bargain for such flexibility in the contract. The sole contingency on which the sale and option rested was planning commission approval of the 10 acre town-house project. The contract does not condition plaintiff's duty to make a reasonable, good faith effort to fulfill this condition precedent on any contingency involving the by-pass. We will not imply a condition precedent that rational parties could have drafted explicitly into their agreement, if they had desired it.

**2.** In order to submit a preliminary plat, one must have the land surveyed, and plaintiff did not have a survey performed until January 1990, after filing suit against defendant.

**3.** The process of planning public roads can take a long time. From the time when the Department of Highways first considers a proposed road, to the time of the final decision on the road's exact course, many years may elapse.

The trial court noted that plaintiff did not offer any form of performance until January 1989, forty months after the contract was entered into on 23 September 1985. During that period, plaintiff neither applied for planning commission approval of the town-house project, nor did it offer any payment for the ten acres. Plaintiff simply failed to perform, or even offer to perform, its duties under the contract within a reasonable time. The trial court correctly decided that the delay was unreasonable as a matter of law.

## II.

■ Plaintiff next argues that the trial court should not have directed a verdict for appellee, because, "[w]hat is a reasonable time for performance in a suit for specific performance, once an advisory jury is impaneled, is an issue for the jury to decide." Plaintiff's contention is wrong. An advisory jury is just that, *advisory*. Before the merger of law and equity in West Virginia, the trial court acting on a specific performance case has been called a trial chancellor, a term which the plaintiff has itself used in reference to the trial judge in this case.

■ Plaintiff claims that the merger of law and equity means that there now exists a right to a jury trial in civil cases that, before the merger, would have been tried by a chancellor in equity. Plaintiff's contention is wrong. The merger of law and equity, effected by Rule 2, *W.Va.R.Civ.P.*, abolished the *procedural* distinctions between law and equity. However, it did *not* extend the right of jury trial to civil cases that, before the merger, would have been in equity. In Syl. Pt. 1, *W.Va. Human Rights Commission v. Tenpin Lounge, Inc.*, 158 W.Va. 349, 211 S.E.2d 349 (1975), decided long after the merger of law and

Although the plaintiff may be correct that the planning commission would not have given timely approval, the real issue is whether the parties contemplated a delay of forty months occasioned by uncertainties about road location. In this regard it is difficult to conclude that the parties to this contract intended that the buyer have a potentially infinite period during which to wait for a favorable climate to develop at the planning commission.

equity in West Virginia, this Court made it clear that, "[s]ince equitable issues are generally determined by a court without a jury, one is not entitled, as a matter of right under the law, to a jury trial of such issues...."

■ Sometimes, the question of whether a case should be considered legal or equitable is difficult. This case is not such a case. When a plaintiff seeks the equitable remedy of specific performance, the case is invariably considered one in equity, and one to which the right of jury trial has never attached. Because the advisory jury's verdict is not binding in any manner, directing a verdict is not what it would be if this were a jury empaneled pursuant to the right to a jury trial.

■ All of the findings of fact, as well as the conclusions of law, were for the trial court to make. The trial court did not need to appoint the advisory jury, nor did it need to listen to the advisory jury. How then can a party complain that a trial court dismissed an advisory jury? The ordinary standard for testing the evidence before directing a verdict is inapplicable here.

■ The decision of the trial court consisted of mixed questions of law and fact. This Court has set out clearly the standard of review applicable to findings of a trial chancellor or a trial court sitting without a jury:

> The finding of a trial court upon the facts submitted to it in lieu of a jury will be given the same weight as the verdict of a jury and will not be disturbed by an appellate court unless the evidence plainly and decidedly preponderates against such finding. Syl. pt. 7, *Bluefield Supply Co. v. Frankel's Appliances, Inc.,* 149 W.Va. 622, 142 S.E.2d 898 (1965).

Syl. Pt. 3, *Teter v. Teter,* 163 W.Va. 770, 260 S.E.2d 270 (1979). The evidence does not preponderate against any part of the trial court's findings of fact. Because we also agree with the trial court's legal conclusions, we affirm.

Affirmed.