638 S.E.2d 160

**Virgil T. HELTON, State Tax Commissioner of the State of West Virginia, Petitioner Below, Appellant**

v.

**R. Michael REED, Chief Administrative Law Judge, West Virginia Office of Tax Appeals and Elk Run Coal Co., Inc., Respondents Below, Appellees.**

No. 32891.

Supreme Court of Appeals of West Virginia.

Submitted March 14, 2006.

Decided June 13, 2006.

Concurring Opinion of Justice Benjamin June 15, 2006.

Dissenting Opinion of Justice Maynard June 30, 2006.

---

Darrell V. McGraw, Jr., Attorney General, Stephen Stockton, Senior Assistant Attorney General, Charleston, for Appellant.

Herschel H. Rose, III, Steven R. Broadwater, Rose Law Office, Charleston, for Appellee Elk Run Coal Co., Inc.

STARCHER, J.:

In this case a taxpayer improperly filed a petition for a tax refund. We conclude that the taxpayer is not entitled to be included in a case where the West Virginia Tax Commissioner was required to refund certain coal production severance taxes.

I.

*Facts & Background*

On November 18, 2002, the appellee Elk Run Coal Co., Inc. ("Elk Run") made a request for a refund to the appellant Virgil T. Helton, State Tax Commissioner of the State of West Virginia ("the Commissioner"), relating to certain taxes arising from Elk Run's 1999 fiscal year. Elk Run asserted that the imposition of approximately $5.5 million dollars in coal production severance taxes on coal that Elk Run exported to other countries in 1999 violated the United States Constitution's Import–Export Clause, art. I, sec. 10, cl. 2.

In December of 2005, this Court decided the substantive issue raised in Elk Run's request for a refund, holding that

> [t]he coal production severance taxes contained in current and earlier versions of

W.Va.Code, 11–12B–3 [2000]; 11–13A–3 [2002]; 11–13A–6 [1997]; 22–3–11 [2005]; and 22–3–32 [1994] do not offend the Import–Export Clause of the United States Constitution, art. I, sec. 10, cl. 2.

Syllabus Point 2, *U.S. Steel Mining Co., LLC v. Helton*, No. 32528, 219 W.Va. 1, 631 S.E.2d 559, 2005 WL 3272114 (2005) ("*U.S. Steel I*") cert. den. —— U.S. ——, 126 S.Ct. 2355, 165 L.Ed.2d 279, 2006 WL 868275, 74 USLW 3572 (2006). (Elk Run was a party to *U.S. Steel I*, but earlier tax years were involved in that case.) [1]

With respect to the taxes at issue in the instant case, by letter dated January 8, 2003, the Commissioner denied Elk Run's request for a refund of severance taxes paid for fiscal year 1999.

After receiving notice of the Commissioner's January 8, 2003 action, pursuant to *W.Va.Code*, 11–10–14(d)(1) [2003] and 11–10A–9(b) [2002], Elk Run had sixty days from the receipt of the Tax Commissioner's letter to file a petition for refund with the newly-created *Office of Tax Appeals* ("OTA"), which acquired jurisdiction over such petitions on January 1, 2003.

On January 24, 2003, Elk Run filed a Petition for Refund—not with the OTA, however, but with the Commissioner. The Commissioner did not forward Elk Run's petition for refund to the OTA, and the OTA did not receive the petition in a timely fashion.[2]

Meanwhile, also in January 2003, a number of other coal companies filed petitions for refund similar to the one filed by Elk Run with the Commissioner, also asserting the unconstitutionality of coal production severance taxes that these companies had paid. These petitions *were* timely received by the OTA, were consolidated for decision by the OTA, and are known collectively as "*U.S. Steel II.*"

In the *U.S. Steel II* cases, the OTA denied the Commissioner's request to hold a decision in abeyance pending the final results of *U.S. Steel I*. On December 11, 2003, the OTA ruled in *U.S. Steel II* (erroneously, as ultimately determined by this Court in *U.S. Steel I*) that the coal production severance taxes in question were unconstitutional and should be refunded. The OTA's written decision in *U.S. Steel II* did not include a ruling on Elk Run's petition or refer to any docket number associated with Elk Run.

The Tax Commissioner appealed the OTA's decision in *U.S. Steel II* to the Circuit Court of Kanawha County. On May 27, 2004, the circuit court affirmed the ruling of the OTA in *U.S. Steel II*—but on procedural grounds, and not on substantive grounds.

---

1. In *U.S. Steel I*, the Tax Commissioner's Office of Hearings and Appeals had ruled on March 31, 2003, that the taxpayers in *U.S. Steel I* (including Elk Run) were not entitled to a refund for taxes paid for the year prior to 1999. That decision was subsequently upheld on May 27, 2004, by the Circuit Court of Kanawha County—and, as noted, *supra*, upheld by this Court, on December 2, 2005.

2. The newly-created OTA is independent of the Commissioner. Prior to January 1, 2003, the Commissioner ruled on petitions for refund using the Commissioner's Office of Hearings and Appeals ("OHA"); and it did not matter whether taxpayers filed petitions for refund with the State Tax Department generally, or specifically with the OHA. However, beginning in January 2003, *W.Va.Code*, 11–10–14(d)(1) [2003] required that "the taxpayer *shall* file the petition *with the office of tax appeals* in accordance with [*W. Va.Code*, 11–10A–9 (2002)]." (Emphasis added.) When Elk Run filed its petition for refund on January 24, 2003, the OTA did not have procedural regulations in effect. Subsequently, on April 20, 2003, Title 121, Section 1–22 of the State Code of Rules was issued, stating that if a [refund] petition is delivered "to a place other than the office of tax appeals, such as, for example, the office of secretary of tax and revenue, the office of state tax commissioner or another office in the state tax department, receipt by that office is not receipt by the office of tax appeals unless the other office forwards the petition to the office of tax appeals within the original statutory period for filing the petition." 121 *W.Va. C.S.R.* Sec. 1–22.7 (2003). Elk Run argues that the absence of this regulation at the time Elk Run filed its petition with the OHA militates against the strict application of the statutory language requiring that the petition "shall" be filed with the OTA pursuant to the provisions of *W.Va.Code*, 11–10A–9(b) [2002]. However, the controlling statutes required delivery of the petition to the OTA within the sixty-day period following a notice of denial of a taxpayer's claim. The ensuing regulation is clarifying language that does not change the clear mandate of the statutory language that was in effect on January 1, 2003.

■ Those procedural grounds were as follows: due to a clerical error, the Tax Commissioner had filed his response to the taxpayers' petitions in *U.S. Steel II* ten days late in the circuit court. The circuit court ruled that the filing deadline in question was jurisdictional, and that the taxpayers in *U.S. Steel II* were therefore entitled to refunds, without regard to the substantive merit of the Commissioner's appeal of the OTA decision. (Again, Elk Run was not included in the circuit court's final order in *U.S. Steel II.*)[3]

On June 16, 2005, the Commissioner filed a petition for appeal of the circuit court's decision in *U.S. Steel II* with this Court. This Court, agreeing that the deadline that the Commissioner had missed by ten days was jurisdictional, refused the petition for appeal on November 3, 2005.

Meanwhile, at some point Elk Run's counsel realized that Elk Run's petition for refund regarding fiscal year 1999 was not included in the OTA's files, and had not been addressed by the OTA or the circuit court in *U.S. Steel II.*

In February of 2005, Elk Run filed a motion with the OTA, asking that the OTA rule that Elk Run's Petition for Refund be deemed to have been timely filed with the OTA on January 24, 2003; and the OTA so ruled in an order entered on March 7, 2005. In addition, the OTA ruled that Elk Run's petition for refund should be deemed to have been included, and decided in Elk Run's favor, in the OTA's decision in *U.S. Steel II.*

In response to the OTA's ruling, the Commissioner filed a petition in the Circuit Court of Kanawha County, challenging the OTA's ruling. By order dated July 12, 2005, the circuit court upheld the OTA's March 7, 2005

ruling, concluding that Elk Run's petition for a refund should be treated as if it had been timely filed with and ruled upon by the OTA, and the circuit court, in Elk Run's favor, in *U.S. Steel II.*

In other words, Elk Run, under the circuit court's ruling that is at issue in the instant case, would be entitled to the same coal severance tax refunds that the other companies were entitled to receive as a result of the Tax Commissioner's procedural default in *U.S. Steel II.*

The Commissioner has appealed the circuit court's decision to this Court.[4]

## II.

### *Standard of Review*

■ The issue presented for our consideration by this appeal is whether the OTA and circuit court properly relieved Elk Run from the consequences of failure to file a timely petition for tax refund before the correct tribunal, as required by the applicable statutes. "Interpreting a statute or regulation presents a purely legal question subject to *de novo* review." Syllabus Point 1, *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W.Va. 573, 466 S.E.2d 424 (1995). Additionally, we review the application of equitable principles by the circuit court under an abuse of discretion standard. *See, e.g.,* Syllabus Point 1, *Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995) (equitable distribution rulings reviewed under abuse of discretion standard).[5]

## III.

### *Discussion*

The foregoing series of events is admittedly convoluted, but the core facts of the instant case are fairly simple.

---

3. A Tax Commissioner pleading before the Circuit Court of Kanawha County in *U.S. Steel II* did list Elk Run's name in the caption along with other companies whose petitions for refund had been filed with the OTA and were included in the OTA's final order. Elk Run points to this fact in support of its claim to be included in and entitled to the same refunds ordered in *U.S. Steel II.* However, the jurisdiction of the OTA over a party who did not file with the OTA cannot be created by the inclusion of that party's name in a caption on a pleading.

4. Elk Run has cross-appealed the circuit court's ruling that the Commissioner's petition and appeal to the circuit court in the instant case was timely. We find no error in the circuit court's ruling.

5. The procedural merger of law and equity has not abolished all distinctions between the two. *See E. Shepherdstown Developers, Inc. v. J. Russell Fritts, Inc.,* 183 W.Va. 691, 694, 398 S.E.2d 517, 520 (1990).

■ Elk Run was required by law to file its appeal with the Office of Tax Appeals. Elk Run did not do so. Because Elk Run misfiled its petition, Elk Run was not a party in *U.S. Steel II.* Subsequently, asserting that it should be deemed to have been a party in *U.S. Steel II*, Elk Run sought and obtained rulings by the OTA and circuit court making Elk Run, *post hoc* and *nunc pro tunc,* a party to *U.S. Steel II.*

Before this Court, Elk Run argues that "the Tax Commissioner must be estopped" from claiming that Elk Run's petition was untimely. In support of that argument, Elk Run states (and the circuit court and OTA held) that the Tax Department did not object to the manner in which Elk Run filed its petition, and never indicated that it would not be forwarded to the OTA; that the Commissioner "understood" Elk Run's petition to be included in *U.S. Steel II;* that the Commissioner forwarded other petitions to the OTA, and that those petitions were treated by the OTA as timely filed; and that the OTA believed that it was ruling on all of the refund petitions pending at the time, no matter where they had been filed.

While these assertions and arguments by Elk Run have some equitable force, two basic considerations militate against giving them dispositive weight in the instant case.

■ The first consideration is the principle that filing requirements established by statute, like the ones involved in the instant case are not readily susceptible to equitable modification or tempering. *See, e.g., Concept Mining, Inc. v. Helton,* 217 W.Va. 298, 617 S.E.2d 845 (2005) (Tax Commissioner's intent was irrelevant and procedural error prohibited consideration of Commissioner's appeal); *State ex rel. Clark v. Blue Cross Blue Shield of W. Va., Inc.,* 195 W.Va. 537, 466 S.E.2d 388 (1995) (strict deadlines in insurance insol-

vency cases); *Solution One Mortg., LLC v. Helton,* 216 W.Va. 740, 613 S.E.2d 601 (2005) (tax statutes which require the giving of bond as a prerequisite to the prosecution of an appeal are strictly construed and their requirements are mandatory and jurisdictional). *See also Elk Run Coal Company v. Babbitt,* 930 F.Supp. 239 (S.D.W.Va.1996) (government could not appeal due to missed deadline); *Bradley v. Williams,* 195 W.Va. 180, 465 S.E.2d 180 (1995) (taxpayer's failure to abide by the express procedures established for challenging a decision of the West Virginia State Tax Commissioner precludes the taxpayer's claim for refund or credit); *Webb v. U.S.,* 66 F.3d 691 (4th Cir.1995) (no equitable tolling of tax filing deadlines); *see generally* Note, "The Problem of Equitable Tolling in Tax Refund Claims," 72 Notre Dame L.Rev. 545 (1995).[6]

■ The second consideration is the application in the instant case of two classic (and closely related) principles: the maxim "equity will not enforce a forfeiture;" and the maxim "he who seeks equity must do equity."

Judge [7] Henry Brannon elucidated the first of these principles in *Craig v. Hukill,* 37 W.Va. 520, 523, 16 S.E. 363, 364 (1892) (citations omitted):

> Affirmative relief against penalties and forfeitures was one of the springs or fountains of equity jurisdiction, and the jurisdiction was very early exercised; and it would be going in the very opposite direction, and acting contrary to its essential principles, to affirmatively enforce a forfeiture. The elementary books on equity jurisprudence state the rule as almost an axiom, that equity never enforces a penalty or forfeiture ... "equity will not assist the recovery of a penalty or forfeiture, or anything in the nature of a forfeiture ...." [8]

---

6. Of course, a rule that entirely barred the consideration of equitable principles in the enforcement of tax refund filing deadlines could be unconscionably harsh. (Consider the case of an unsophisticated taxpayer who was given erroneous information by a tax official.) Nevertheless, the quoted authority illustrates a significant judicial reluctance to "bend the rules," even for strong equitable reasons, in tax filing cases. *Bradley v. Williams, supra.*

7. In 1892 the members of this Court were referred to as Judges.

8. *See also Ice v. Barlow,* 85 W.Va. 490, 492, 102 S.E. 127, 128 (1920) ("Other well-settled principles of equity are that it will not enforce penalties and forfeitures ..."). That this principle is not absolute is reflected in *Horse Creek Coal Land Co. v. Trees,* 75 W.Va. 559, 562, 84 S.E. 376, 378 (1915), where this Court stated:

■ "Forfeiture" is defined by *Black's Law Dictionary*, Sixth Edition, as "the loss of ... property because of a ... neglect of duty." "To forfeit is to incur loss through some fault, omission, error or offense." 14B *Michie's Jurisprudence*, Penalties and Forfeitures, Sec. 2 (2005).

In *U.S. Steel II*, the Commissioner forfeited nearly $20 million dollars of taxes because the Commissioner did not adhere to a statutory timely filing requirement.

In the instant case, Elk Run wants to assert equitable factors—the "understanding" and "intent" of the parties, and the "estoppel" effect of the Commissioner's conduct—in order to claim the benefit of and enforce a forfeiture by the Commissioner. Elk Run wants "sauce for the goose"—the application of strict jurisdictional deadlines to the procedural error by the Commissioner, but not "sauce for the gander"—the application of the same strict deadlines to a procedural error by Elk Run.

With respect to the second equitable principle, "he who seeks equity must do equity," in *Malcolm v. Talley*, 89 W.Va. 531, 536, 109

> While *Brewster v. [Lanyon] Zinc Co.*, 140 Fed. 801 cited, declares "there is no insuperable objection to the enforcemnt [sic] of a forfeiture in a court of equity when that is more consonant with the principles of right, justice and morality than to withhold equitable relief", it adds that "A suit the primary and only purpose of which is to establish a forfeiture as matter of record, and to cancel the thing forfeited, in this instance a lease, is a suit to give effect to and therefore in aid of the enforcement of a forfeiture; and the equity which it presents must be strong enough to overcome the general indisposition of courts of chancery towards granting such relief".
>
> In *Warner v. Haught, Inc.*, 174 W.Va. 722, 729–730, 329 S.E.2d 88, 96 (1985), this Court stated: ... it is well recognized that this Court has modified the rule disfavoring equitable forfeitures to the extent that "forfeiture is favored, when, instead of working a loss or injury contrary to equity, it promotes justice and equity and protects the owner against the indifference, laches, and injurious conduct of the lessee." *Doddridge County Oil & Gas Company v. Smith*, 154 Fed. 970, 978 (N.D.W.Va.1907) (citing cases therein).

**9.** Several jurisdictions, both federal and state, have utilized the equitable maxim of "he who seeks equity must do equity" as part of determin-

S.E. 613, 615 (1921), citing this maxim, this Court quoted as follows:

> "If, for example, a Plaintiff seeks an account against the Defendant, the Court will require the Plaintiff to do equity by *submitting himself to account in the same matter in which he asks an account;* ..."

(Emphasis added, citations omitted.)

The Latin formulation of this principle is *"qui sentit commodum sentire debet et onus,"* or "he who receives the advantage ought also to suffer the burden." *Black's Law Dictionary* (6th Ed. 1991); *cf. Bratt v. Peterson*, 31 Wis.2d 447, 143 N.W.2d 538 (1966) (action to quiet title).[9]

Applying this principle, Elk Run might present a stronger case if it wanted its petition for a refund to be deemed to have been timely filed with the OTA, and then to have its petition decided by the OTA on the merits—instead of claiming the benefit of the Commissioner's procedural default. Of course, Elk Run would lose by "submitting [itself] to account" in a proceeding considering the merits of its petition—because this Court has ruled that the coal production severance taxes in question are constitutional.[10]

ing outcomes in a variety of factual situations. *See, e.g., Worthington v. Anderson*, 386 F.3d 1314 (10th Cir.2004) (trademark infringement); *In re U.S. Lines, Inc.*, 318 F.3d 432 (2d Cir.2003) (statute of limitations for asbestos claims); *PYCA Industries, Inc. v. Harrison County Waste Water Mgt. Dist.*, 177 F.3d 351 (5th Cir.1999) (construction contract dispute); *J & M Bail Bonding Co. v. Hayes*, 748 So.2d 198 (Ala.1999) (appeal of revocation of authority to issue bail bonds); *Inman v. Inman*, 67 P.3d 655 (Alaska 2003) (divorce settlement); *Ouachita Trek and Dev. Co. v. Rowe*, 341 Ark. 456, 17 S.W.3d 491 (2000) (sale of land contract); *Salzman v. Bachrach*, 996 P.2d 1263 (Colo.2000) (property dispute); *Simard v. White*, 383 Md. 257, 859 A.2d 168 (2004) (foreclosure proceeding); *Demoulas v. Demoulas*, 432 Mass. 43, 732 N.E.2d 875 (2000) (estate settlement); *NOLM, LLC v. County of Clark*, 120 Nev. 736, 100 P.3d 658 (2004) (property tax dispute); *Creech v. Melnik*, 347 N.C. 520, 495 S.E.2d 907 (1998) (breach of implied contract in context of medical malpractice case); *Landers v. Biwer*, 714 N.W.2d 476, 2006 WL 1319644 (N.D. 2006) (option contract for sale of land).

**10.** *Equity* does not support depriving the citizens of West Virginia of millions of dollars of legitimately-owed taxes simply because a public official made a minor mistake. That result may

For the foregoing reasons, we conclude that Elk Run's arguments as to why it should be included in and benefit from the ruling in *U.S. Steel II* are unavailing.

## IV.

### *Conclusion*

We reverse the decision of the Circuit Court of Kanawha County and rule that the Petition for a Refund filed by Elk Run was not included in *U.S. Steel II*, and that therefore Elk Run is not entitled to a refund of the coal production severance taxes in question.

Reversed.

BENJAMIN, Justice, concurring:

(Filed June 15, 2006)

While I agree with the result reached in this case, I write separately because I believe the majority unnecessarily embraces principles of equity in a case easily decided by the application of statutory law.

Based upon the rules of statutory interpretation of the law applicable to this case, a reversal of the circuit court's order is compelled. This Court has repeatedly said that the term "shall", as used by the Legislature, makes the statutory requirement mandatory rather than directory. *See*, Syl. Pt. 1, *Nelson v. West Virginia Public Employees Ins. Bd.*, 171 W.Va. 445, 300 S.E.2d 86 (1982) ("It is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation."). *Accord State ex rel. Stump v. Johnson*, 217 W.Va. 733, 619 S.E.2d 246, 255 (2005). *See also State ex rel. Brooks v. Zakaib*, 214 W.Va. 253, 264–65, 588 S.E.2d 418, 429–30 (2003) ("Ordinarily, the word 'shall' has a mandatory, directory connotation." (citations omitted)); *State v. Allen*, 208 W.Va. 144, 153, 539 S.E.2d 87, 96 (1999) ("General-

ly, 'shall' commands a mandatory connotation and denotes that the described behavior is directory, rather than discretionary." (citations omitted)). Here, the applicable statutory language is clear and without ambiguity in expressing legislative intent and it should be given full force and effect. Resort to principles of equity is unnecessary.

W.Va.Code § 11–10–14(d)(1) (2002) [1] unequivocally defeats the contentions of respondents in this case. A statute may not, under the guise of interpretation, be modified, revised, amended, distorted, remodeled or re-written to achieve some other resort; and while it may be unfortunate to this taxpayer that the Legislature did not foresee the situation now before us, this Court should not rewrite the statute so as to provide the relief sought by respondent.

For the reasons stated above, I concur in the result reached by the majority in this case. I do so, however, not because equity compels it, but rather because the rule of law compels it.

MAYNARD, Justice, dissenting:

(Filed June 30, 2006)

On occasion this Court has recognized that the strict enforcement of filing requirements should be tempered by considerations of fairness or equity in order to avoid a harsh result. The majority opinion serves notice, however, that equitable considerations do not apply to all parties equally.

I would have affirmed the circuit court's ruling that Elk Run's petition for a refund should be treated as if it had been properly filed. The facts indicate that Elk Run filed a petition for a refund with the Tax Commissioner on January 24, 2003. Prior to January 1, 2003, Elk Run's petition would have been properly filed. However, on that date, amendments to the applicable statute became effective which required that petitions for a refund be filed with the newly-created Office of Tax Appeals rather than with the Commis-

---

have been compelled in *U.S. Steel II* by the application of the strict language of the law, but it was not compelled by the application of *equitable* principles.

1. W. Va.Code § 11–10–24(d)(1) (2002) provides, in pertinent part, "[t]hat after the thirty first day

of December, two thousand two, the taxpayer *shall* file the petition with the office of tax appeals in accordance with the provisions of section nine, article ten-a of this chapter." (Emphasis added). Amendments made to W. Va.Code § 11–10–24 in 2003 did not alter this portion of the statute.

sioner. Due to the very recent changes in the law, I believe that Elk Run's improper filing was understandable, and that the Commissioner had a duty to forward Elk Run's petition to the proper entity. However, the Commissioner did not forward Elk Run's petition, object to the manner in which Elk Run filed its petition, or give notice to Elk Run that its petition was improperly filed.

According to the majority, its decision is based in part on the principle that filing requirements like the one at issue are not readily susceptible to equitable modification. Past decisions of this Court, however, suggest otherwise. For example, in the recent case of *Hinchman v. Gillette*, 217 W.Va. 378, 618 S.E.2d 387 (2005), this Court reviewed the dismissal below of a medical malpractice action due to the fact that the appellant's pre-suit notice of claim and screening certificate of merit were defective and insufficient under W.Va.Code § 55–7B–6 (2003). Upon review of that case, I thought it obvious that the appellant's certificate was so deficient under the relevant statute that an immediate dismissal was warranted. The majority, however, disagreed. After finding immediate dismissal too draconian a measure for failure to adhere to the relevant filing requirements, the majority essentially rewrote the requirements and reinstated the appellant's suit.

The Court has also relaxed filing deadlines on behalf of workers' compensation claimants. For example, in *Sypolt v. WCD and W.Va. DHHR*, No. 30812 (Memo. order, March 12, 2003), the claimant was injured on December 31, 1999, which, under the six-month limitation period in W.Va.Code § 23–4–15, gave the plaintiff until approximately July 1, 2000, to file a workers' compensation claim. The *employer* received the claim on June 23, 2000, but the Workers' Compensation Division did not receive the claim until July 12, 2000. As a result, the Division, the Office of Judges, and the Workers' Compensation Appeal Board all agreed that the claim was untimely. On appeal, this Court reversed the Appeal Board and remanded the claim to the Office of Judges to make a finding that the claim was timely filed despite this Court's previous holding that,

> The filing of an application for compensation in the office of the employer of the claimant in the belief, or with the understanding or expectation, that it would be forwarded to the Compensation Commissioner within the six months' period provided by statute, was not a filing thereof in the office of the Commissioner within the meaning of Code, 23–4–15.

Syllabus Point 2, *Young v. State Compensation Com'r*, 121 W.Va. 126, 3 S.E.2d 517 (1939). *See also Harmon v. WCD and Tug Valley Women's Health Center*, No. 27869 (Memo. order, June 22, 2001) (reversing ruling that claim was untimely where claim was filed 28 days late); *Fox v. WCD and Ravenswood Aluminum Corp.*, No. 27122 (Memo.order, July 27, 2000) (finding that claim should be considered new one despite fact that claimant untimely filed it as a reopening of old claim).

In the instant case, excluding Elk Run from the opportunity to receive a tax refund for the hyper-technical reason relied upon by the majority is unfair and will possibly subject Elk Run's lawyers to a legal malpractice claim. Simply put, there is no good reason to deny Elk Run relief under the facts of this case, especially when one considers that the decision may have been different if Elk Run were a medical malpractice plaintiff or a workers' compensation claimant instead of a coal company. Accordingly, I dissent.