679 S.E.2d 587

In re TAX ASSESSMENT AGAINST
PURPLE TURTLE, LLC., et al.,
Petitioners Below, Appellees

v.

Preston GOODEN, Assessor of Berkeley
County, West Virginia, Respondent
Below, Appellant.

No. 34276.

Supreme Court of Appeals of
West Virginia.

Submitted Feb. 25, 2009.

Decided March 31, 2009.

Floyd M. Sayre, III, Bowles, Rice, McDavid, Graff & Love, Martinsburg, WV, for Appellant.

1. Pursuant to administrative order entered March 23, 2009, the Honorable Thomas E. McHugh, Senior Status Justice, was recalled for temporary assignment to the Supreme Court of Appeals of West Virginia under the provisions of Article III, section 8 of the Constitution of West Virginia.

Kenneth J. Barton, Jr., M. Dawn Alexander, Steptoe & Johnson, Martinsburg, WV, for Appellees.

PER CURIAM:[1]

This is an appeal by Preston Gooden (hereinafter "Assessor"), Assessor of Berkeley County, West Virginia, from an order of the Circuit Court of Berkeley County granting summary judgment to owners (hereinafter "Taxpayers") of certain lots located in a subdivision known as Broomgrass, Gerrardstown Tax District, Berkeley County, West Virginia. In granting summary judgment to the Taxpayers, the circuit court reversed a decision of the Assessor, as affirmed by the Berkeley County Commission sitting as the Board of Equalization and Review (hereinafter "Board"), which had assigned an assessed value to property owned by the Taxpayers for the 2006 and 2007 tax years.

On appeal to this Court, the Assessor contends that the lower court erred by reversing the Board and by granting summary judgment to the Taxpayers. Upon thorough review of the parties' arguments, the record presented to this Court, and the pertinent authorities, we reverse the decision of the Circuit Court of Berkeley County and remand this matter for entry of an order reinstating the assessments initially rendered by the Assessor.

## I. Factual and Procedural History

In October 2004, Appellee Purple Turtle, LLC, (hereinafter "Purple Turtle") acquired 320 acres of property located in Gerrardstown Tax District, Berkeley County, West Virginia. In 2005, the entire 320–acre tract was valued by the Assessor at the farm rate of $40,900.00. Purple Turtle subsequently subdivided sixteen one-acre tracts from the original 320 acres, creating the Broomgrass subdivision. Purple Turtle marketed the sixteen one-acre tracts for sales prices ranging from $175,000.00 and $225,000.00.[2]

2. Property record cards maintained by the Berkeley County Assessor's Office indicate that the following lots where sold by Purple Turtle: Lot 1–$205,000.00, Lot 2–$195,000.00, Lot 3–$195,000.00, Lot 4–$195,000.00, Lot 5–$205,000.00, Lot 8–$195,000.00, Lot 9–$205,000.00, Lot 13–$205,000.00, and Lot 15–$185,000.00. An advertising brochure for Broomgrass subdivision indicates that several

Prior to January 15, 2006, the Assessor performed an appraisal of the properties in question, valuing each of the one-acre lots at $192,000.00.[3] The Assessor provided the required notification of the proposed assessments to the Taxpayers, and on February 16, 2006, the Taxpayers filed a protest to the 2006 proposed assessments with the Board.[4]

During hearings before the Board, evidence was reviewed indicating that the Assessor had determined the amount of the assessments by collecting comparable sales data in the Broomgrass subdivision and entering such data into the Computer Assisted Mass Appraisal System Software. Based upon the data, the Assessor had determined that the appraised value for the subject lots was $192,000.00 per lot. According to a letter from the Berkeley County Assessor's Office to the Berkeley County Commission, dated February 16, 2006, the one-acre lots were appraised "based on the average sale price of $192000 ... [and the] remaining 304 acres are valued at a reduced farm agricultural price per acre."

The explanatory letter from the Assessor observed that the Purple Turtle Group had argued that the appraisals of the one-acre lots reflected a 300,000% increase in market value, recognizing that the entire 320–acre tract was valued at $40,900.00 in 2005 based upon farm rates. The Assessor maintained, however, that the creation of the organic farm community of Broomgrass and the new subdivided "lots created a new neighborhood for the 2006 tax year." The Assessor further indicated that "[b]ecause of its uniqueness, Broom Grass (sic) does not compare to other subdivisions, so we appraised them (the lots) at the market they created." [5]

In support of their protest to these assessments, the Taxpayers presented an Appraisal Report and Valuation Analysis of 320.5849 Acres (Broomgrass) prepared by John P. McClurg and Calvert L. Estill of the Hawthorne Group in April 2005. This appraisal (hereinafter "Hawthorne appraisal") was originally prepared by the Hawthorne Group for the Berkeley County Farmland Preservation Board pursuant to that group's interest in obtaining a conservation easement over the Purple Turtle acreage. The Hawthorne appraisal opined that the value of the lots at issue was $40,000 each. It recognized the difference in value between the sixteen subdivided lots and the remaining farmland, and it determined the value of the sixteen lots by comparing six sales of similar properties in the immediate area that had been sold in 2004 and 2005. The sizes of the lots used for comparison purposes ranged from 1.62 to 2.5 acres, and the unit prices for those lots

---

amenities will eventually be included within the subdivision, including a 25 meter pool, spa, cabana, bath house, multi-use ball field, barn, field tractor, and an organic farm.

**3.** West Virginia Code § 11–3–1 (1977) (Repl. Vol. 2008) provides, in pertinent part, as follows:

All property shall be assessed annually as of the first day of July at its true and actual value; that is to say, at the price for which such property would sell if voluntarily offered for sale by the owner thereof, upon such terms as such property, the value of which is sought to be ascertained, is usually sold, and not the price which might be realized if such property were sold at a forced sale, except that the true and actual value of all property owned, used and occupied by the owner thereof exclusively for residential purposes shall be arrived at by giving primary, but not exclusive, consideration to the fair and reasonable amount of income which the same might be expected to earn, under normal conditions in the locality wherein situated, if rented....

This Court has explained that "[t]he price paid for property in an arm's length transaction, while not conclusive, is relevant evidence of its true and actual value." Syl. Pt. 2, in part, *Kline v. McCloud*, 174 W.Va. 369, 326 S.E.2d 715 (1984).

**4.** The Taxpayers ultimately filed protests to both the 2006 and 2007 assessments by the Assessor, filed February 16, 2006, and February 20, 2007, respectively. The Board eventually affirmed the Assessor's assessments for both years, and the Taxpayers appealed those determinations to the circuit court. The circuit court considered the matters jointly and granted summary judgment to the Taxpayers. On appeal to this Court, the underlying proceedings involving the individually-filed 2006 and 2007 protests will be considered together.

**5.** The Assessor's letter further observed that "[i]n most subdivisions through out [sic] our county, the purchase of a lot includes usage of the common area and amenities with an interest in those areas once they are turned over to the home owners association, but the lots are still valued and sold at market value with the interest included."

ranged from $29,787.00 to $45,000.00 per acre, with an unadjusted mean value per acre of $39,304.00. The Taxpayers argued that the Assessor should not have based his appraisal on the average sale price per lot within Broomgrass since such sale prices were set above fair market value in order to fund the preservation of the adjoining farmland which was to be made into a working organic farm.

The Assessor asserted that the Hawthorne appraisal did not constitute an accurate appraisal of the subject property since it had been formulated as an appraisal of a potential easement for the Berkeley County Farmland Preservation Board. The Assessor claimed that the Hawthorne appraisal failed to comply with standards established by the Uniform Standards of Professional Appraised Property (USPAP) since it had been prepared for a purposed other than that for which it was being utilized in the present litigation.

The Board ultimately concluded that the Taxpayers had failed to prove by clear and convincing evidence that the proposed assessments were erroneous and that the subject property was not assessed at its true and actual value. The Taxpayers filed appeals of the Board's determinations regarding the 2006 and 2007 tax assessments with the Circuit Court of Berkeley County on March 24, 2006, and March 22, 2007, respectively. In both instances, however, the Taxpayers failed to attach the record of the proceeding before the Board within thirty days.[6]

The Assessor filed a motion to dismiss the appeals based upon the Taxpayers' failure to attach the record within thirty days. That motion was denied by the Circuit Court. On April 11, 2007, the Assessor filed a motion for a writ of prohibition, and this Court refused such motion on May 10, 2007.

On July 11, 2007, the Taxpayers filed a motion for summary judgment on the consolidated appeals of the 2006 and 2007 assessments by the Assessor. On November 28, 2007, the lower court entered an order granting the Taxpayers' motion for summary judgment and setting the assessed valued at $40,000.00 per lot. At the circuit court level, the Assessor argued that the Taxpayers' appeal should be dismissed because the records of the proceedings before the Board were not attached to the appeal and were not provided within thirty days. The circuit court did, however, have the record prior to rendering its opinion dated November 28, 2007. The Taxpayers thus characterized any error in failing to provide the record within thirty days as harmless.

## II. Standard of Review

This Court has consistently held that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). In syllabus point one of *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995), this Court stated: "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." In *Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995), this Court explained that "[a]lthough factual findings are reviewed under the clearly erroneous standard, mixed questions of law and fact that require the consideration of legal concepts and involve the exercise of judgment about the values underlying legal principles are reviewed *de novo*." 194 W.Va. at 265, 460 S.E.2d at 266.

Thus, it has been recognized that a multifaceted standard of review is applicable to decisions of a circuit court. Syllabus point two of *Walker v. West Virginia Ethics Comm'n,* 201 W.Va. 108, 492 S.E.2d 167 (1997), explained this standard as follows: "In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion stan-

---

**6.** Regarding the appeal of the 2006 assessment, the Taxpayers did provide the record of the proceedings before the Board on March 7, 2007, in response to the filing of the Assessor's motion to dismiss the appeal of the 2006 tax assessment. Thus, the record was presented to the circuit court over a year after the Board's determination regarding the 2006 tax assessments. With regard to the appeal of the 2007 assessment, the Taxpayers did provide a portion of the record 78 days after the decision of the Board.

dard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review."

With these standards of review as guidance, we proceed to a discussion of the substantive issues raised by the parties in this appeal.

### III. Discussion

■ The Assessor contends that the lower court erred in denying his motion to dismiss the Taxpayers' appeal based upon the Taxpayers' failure to properly perfect such appeal by filing the appeal within thirty days and *also* filing the record of the proceedings below within thirty days. In *Rawl Sales and Processing Co. v. County Comm'n*, 191 W.Va. 127, 443 S.E.2d 595 (1994), this Court explained that a party aggrieved by a proposed tax assessment, having appeared before the County Commission sitting as a Board of Equalization and Review, may request review of the Board's determination by the

circuit court, pursuant to West Virginia Code § 11–3–25 (1967) (Repl. Vol. 2005). The *Rawl Sales* opinion clarified that the determination of whether the aggrieved party has properly perfected the appeal must be premised upon West Virginia Code § 58–3–4 (1923) (Repl. Vol. 2005), read in pari materia with West Virginia Code § 11–3–25.[7] The resulting requirement, as clarified in *Rawl Sales*, is that the petition for appeal must be filed within thirty days *and* must be accompanied by the record of the proceeding at the Board level.

■ This Court, in both *In re Stonestreet*, 147 W.Va. 719, 131 S.E.2d 52 (1963), and *Rawl Sales*, explained that where the petition, though presented within the thirty-day period, is not *accompanied by* the record of the proceeding below and no record of such proceeding is filed in the circuit court within thirty days, the appeal is to be refused by the circuit court. Syllabus point three of *Rawl Sales* provides the following explanation:

---

7. West Virginia Code § 11–3–25 provides, in pertinent part, as follows:

Any person claiming to be aggrieved by any assessment in any land or personal property book of any county who shall have appeared and contested the valuation or whose assessment has been raised by the county court [county commission] above the assessment fixed by the assessor, or who contested the classification or taxability of his property may, *at any time up to thirty days* after the adjournment of the county court, apply for relief to the circuit court of the county in which such books are made out; but he shall, before any such application is heard, give ten days' notice to the prosecuting attorney of the county, whose duty it shall be to attend to the interests of the State, county and district in the matter, and the prosecuting attorney shall give at least five days' notice of such hearing to the Tax Commissioner. The right of appeal from any assessment by the county court, as hereinbefore provided, may be taken either by the applicant or by the State, and in case the applicant, by his agent or attorney, or the State, by its prosecuting attorney or Tax Commissioner, desires to take an appeal from the decision of the county court, the party desiring to take such an appeal shall have the evidence taken at the hearing of the application before the county court. If there was an appearance by or on behalf of the owner before the county court, or if actual notice, certified by such court, was given to the owner, the appeal, when allowed by the court or judge, in vacation, shall be determined from the evidence so certified. If,

however, there was no actual notice to such owner, and no appearance by or on behalf of the owner before the county court, or if a question of classification or taxability is presented, the matter shall be heard de novo by the circuit court.

W. Va.Code § 11–3–25 (emphasis supplied).

West Virginia Code § 58–3–4 provides as follows:

In any case in which an appeal lies under section one [§ 58–3–1] of this article on behalf of a party to a controversy in a county court [county commission], such party may present to the circuit court of the county in which the judgment, order or proceeding complained of was rendered, made or had, or in the vacation of such court, to the judge of such court, the petition of such party for an appeal. Such petition shall be presented within four months after such judgment, order or proceeding was rendered, had or made, and shall assign errors. It shall be accompanied by the original record of the proceeding in lieu of a transcript thereof. Such original record shall be understood as including all papers filed in the proceeding, certified copies of all orders entered in the proceeding, copies of which are not in the files, and all matters included in bills of exceptions, or certificates in lieu thereof, as provided in section three [§ 58–3–3] of this article. The record may likewise include and the court may consider an agreed statement of facts, and, in case the testimony in the proceeding below was not stenographically reported and preserved, a certificate of facts made by such commissioners, or a majority of them.

"The provisions of Section 25, Article 3, Chapter 11, Code, 1931, as amended, governing appeals from the county court to the circuit court of the county from an assessment made by the county court, in which there was a hearing and an appearance by the property owner, and requiring that the application for an appeal be presented in the circuit court within thirty days from the adjournment of the county court by which the order complained of was rendered, and the provisions of Section 4, Article 3, Chapter 58, Code, 1931, requiring that the petition be accompanied by the original record of the proceeding in the county court in lieu of a transcript of such proceeding, are mandatory and will be read and considered together; and when it appears upon review in this Court that the petition, though presented within the thirty day period, was not accompanied by the original record of the proceeding in the county court and that no record of such proceeding was filed in the circuit court within the limitation of thirty days prescribed by Section 25 of the statute, the appeal applied for must be refused by the circuit court and the writ of error awarded by this Court to the judgment of the circuit court refusing such appeal will be dismissed." Syllabus, *In re Stonestreet*, 147 W.Va. 719, 131 S.E.2d 52 (1963).

Syllabus point four of *Rawl Sales* continues as follows: "The proper procedures for appeal from a county court [county commission] decision are outlined in West Virginia Code § 58–3–1 *et seq.* The provisions of this article are to be read *in pari materia* with § 11–3–25, which specifically addresses the appeal process for property tax assessments that are made pursuant to the property revaluation set forth in W.Va.Code § 11–1C–1 *et seq.*" In *Stonestreet*, this Court recognized that "[t]he statutory provisions which relate to and govern appeals from the county court to the circuit court are mandatory and must be complied with and satisfied." 147 W.Va. at 726, 131 S.E.2d at 56. In *Rawl Sales*, the record was filed fifty-one days late. This Court held that because the taxpayers failed to comply with the mandatory jurisdictional requirements, review should have been refused by the lower court. 191 W.Va. at 132, 443 S.E.2d at 600.

The Assessor in the case sub judice asserts that the Taxpayers failed to comply with mandatory jurisdictional requirements because they did not provide the circuit court with a record of the proceedings below within thirty days. The Taxpayers respond by asserting that any error in failing to include the record in a timely fashion was harmless and that the rule requiring the submission of such record should not be utilized to deprive them of jurisdiction. The Taxpayers direct this Court's attention to the assertion of Justice Neely in his dissent to *Rawl Sales*, wherein he opined as follows: "The majority's emphasis of form over substance is particularly ironic because the form emphasized, namely the procedure for appealing tax assessments, is probably the least competent of any similar procedure in the entire *Code*." 191 W.Va. at 132, 443 S.E.2d at 600 (Neely, J., dissenting).

In that vein, the Taxpayers assert that their failure to file the record did not prejudice the Assessor since he prepared and submitted evidence supporting his claim and had ample opportunity to review the material presented by the Taxpayers. In response to that contention, the Assessor maintains that the prejudice which is occasioned by the failure to file the record is not that *the Assessor* is unaware of the evidence presented but rather that *the reviewing court* does not have access to the record which is indispensable to a thorough review of the Board's conclusions.

The Assessor asserts that the statutory framework for the appeal and review of decisions of the Board is absolutely clear. Indeed, as this Court stated in *Helton v. Reed*, 219 W.Va. 557, 638 S.E.2d 160 (2006), "filing requirements established by statute ... are not readily susceptible to equitable modification or tempering." 219 W.Va. at 561, 638 S.E.2d at 164; *see also Concept Mining, Inc. v. Helton*, 217 W.Va. 298, 617 S.E.2d 845 (2005) (Tax Commissioner's intent was irrelevant and procedural error prohibited consideration of Commissioner's appeal); *Solution One Mortg., LLC v. Helton*, 216 W.Va. 740, 613 S.E.2d 601 (2005) (tax statutes requiring bond as prerequisite to prosecution of appeal are strictly construed); *State ex rel. Clark v. Blue Cross Blue Shield of W. Va., Inc.*, 195

.

W.Va. 537, 466 S.E.2d 388 (1995) (strict deadlines in insurance insolvency cases); *Bradley v. Williams*, 195 W.Va. 180, 465 S.E.2d 180 (1995) (taxpayer's failure to abide by express procedures established for challenging decision of Tax Commissioner precludes taxpayer's claim for refund or credit).

Upon review by this Court, we find no justification for deviation from the methodology established by statute and solidified by *Rawl Sales* and *In re Stonestreet.* Where the petition for appeal, though presented during the designated thirty-day period, is not accompanied by the record from the proceedings below and such record is not provided within thirty days, the appeal has not been properly perfected and must be refused. Based upon that standard, we hold that the Taxpayers' appeal in the present case should have been refused due to their failure to comply with mandatory statutory jurisdictional requirements.[8]

### IV. Conclusion

For the foregoing reasons, the order of the Circuit Court of Berkeley County is hereby reversed, and this matter is remanded for entry of an order reinstating the assessments initially rendered by the Assessor.

Reversed and remanded.

Senior Status Justice McHUGH sitting by temporary assignment.

Chief Justice BENJAMIN concurs and files a concurring opinion.

BENJAMIN, Chief Justice, concurring.

I agree with the majority *per curiam* opinion of the Court and its resolution of this matter based upon the methodology established by statute and solidified by *Rawl Sales and Processing Co. v. County Comm'n.*, 191 W.Va. 127, 443 S.E.2d 595 (1994) and *In re*

*Stonestreet*, 147 W.Va. 719, 131 S.E.2d 52 (1963). I write separately, however, to again underscore my disagreement with the continuing disparity which currently exists regarding the proof burdens of the State and of its citizens in property tax assessment cases in West Virginia.[1] Absent reliance on some vague statist doctrine of a superceding governmental entitlement to the fruits of one's labors, there is no compelling or even rational basis to permit the State a lesser burden of proof in the taking of a citizen's property (in the form of tax payments) than there is for the citizen in keeping his or her property. The resolution of this matter turning not on proof burdens, but rather on procedural methodology, I concur in the majority opinion.

---

8. If subsequent litigation of the tax assessment on the subject property is undertaken, the trial court should remain cognizant of the evidentiary principles announced by this Court in the recent opinions of *In re Tax Assessment of Foster Foundation's Woodlands Retirement Community*, 223 W.Va. 14, 672 S.E.2d 150 (2008), and *Bayer MaterialScience, LLC v. State Tax Comm'r*, 223 W.Va. 38, 672 S.E.2d 174 (2008), requiring that a taxpayer challenging an assessment must prove *by clear and convincing evidence* that the assessment is erroneous.

1. Pursuant to this Court's decision in *In re Tax Assessment of Foster Foundation's Woodlands Retirement*, 223 W.Va. 14, 672 S.E.2d 150 (2008), the State need only meet a *preponderancy* burden of proof in tax assessment cases, whereas a citizen seeking to keep his property (in the form of tax payments) must meet a higher *clear and convincing* burden of proof. *Foster Foundation's Woodlands*, at Syl. Pt. 5. As set forth in my dissenting opinion therein, I believe such a disparity is constitutionally impermissible. *In re Tax Assessment of Foster Foundation's Woodlands Retirement, supra* (J. Benjamin, dissenting).