45 F.3d 425
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 FALCON SEABOARD GAS COMPANY, Plaintiff-Appellee,
v.
EASTERN AMERICAN ENERGY CORPORATION, Defendant-Appellant.
 No. 94-1532.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 7, 1994.
Decided Jan. 10, 1995.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. John T. Copenhaver, Jr., District Judge. (CA-92-782, CA-92-791).
 ARGUED: Joseph R. Goodwin, GOODWIN & GOODWIN, Charleston, WV, for Appellant. John Ellis O'Neill, CLEMENTS, O'NEILL, PIERCE & NICKENS, L.L.P., Houston, TX; James Daniel McQueen, Jr., MCQUEEN & BROWN, L.C., Charleston, WV, for Appellee. ON BRIEF: Richard D. Owen, GOODWIN & GOODWIN, Charleston, West Virginia, for Appellant.
 S.D.W.Va.
 AFFIRMED.
 Before WILKINS and WILLIAMS, Circuit Judges, and LAY, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Eastern American Energy Corporation (Eastern) appeals a summary judgment order entered in favor of Falcon Seaboard Gas Company (Falcon). We affirm.
 
 
 2
 This dispute concerns whether a March 7, 1991, letter signed by both parties constitutes a final and enforceable agreement for the purchase and sale of natural gas. In early 1991, Falcon negotiated a purchase of gas from Eastern, to be delivered through pipelines to a proposed cogeneration facility to be built by Falcon. In February and March, 1991, the parties circulated drafts of what later became the two-page March 7th letter, as well as drafts of longer and more formal contract documents containing provisions missing from the letter.
 
 
 3
 The March 7th letter indicated that Falcon was attempting to finance its cogeneration facility, and that the parties proposed to enter into a fifteen-year contract for delivery of gas to "[m]utually agreeable point(s) of receipt into the mainline pipeline of Columbia Gas Transmission Corporation" (Columbia). (J.A. at 3392.) The letter also indicated that Eastern would provide a corporate warranty on deliveries that were mutually satisfactory to Eastern and to Falcon's lenders. Furthermore, if required by Falcon or its lenders, Eastern agreed to dedicate production from specific leasehold estates to guarantee delivery of the contract volume obligations. The letter also stated that Falcon's first payment to Eastern would be made in June of 1992, regardless of the completion status of Falcon's cogeneration facility. The final paragraph of the letter stated that Eastern and Falcon would "begin immediately to draft the final sales and purchase contract document, such agreement to be signed and entered into when Falcon Seaboard has confirmed its financing arrangements and contemporaneously with the execution of the transportation agreements applicable to the gas to be purchased hereunder." (J.A. at 3393.)
 
 
 4
 The transportation agreements were never finalized; Columbia, the pipeline company that was to transport the gas to the facility, went bankrupt in August of 1991; and Eastern never delivered any natural gas to Falcon. Also, the dedication assurances were never completed to Falcon's satisfaction. (J.A. at 3369.) No final sales and purchase contract document was signed or entered into by Falcon and Eastern. Falcon reneged on the March 7th letter agreement in August of 1991, and eventually built the cogeneration facility, obtaining its gas from other sources. In July of 1992, Eastern invoiced Falcon for the first payment under the March 7th agreement.
 
 
 5
 Falcon sought a declaratory judgment from the district court that the March 7th letter was not a binding contract for the purchase of gas, and Eastern filed a counter-action against Falcon for breach of the March 7th contract. On cross-motions for summary judgment, Falcon argued that the March 7th letter was not a binding contract because it contained conditions precedent that were never met, including the confirmation of Falcon's financing, the execution of mutually agreeable transportation agreements, the provision by Eastern of a corporate warranty, the dedication of production sufficient to guarantee delivery, and the entry into a final sales and purchase contract document. Eastern argued that the March 7th letter was a binding contract and that the "final sales and purchase contract" mentioned therein was intended merely to memorialize the March 7th agreement. Eastern also argued that any further drafting only involved insertion of standard boilerplate language and that any final terms missing from the March 7th letter, such as the point(s) of delivery, could be established through the gap-filling provisions of the UCC.
 
 
 6
 The district court, applying Article 2 of West Virginia's Uniform Commercial Code, W. Va.Code Sec. 46-2-101 et seq. (1993), determined that the parties did not intend the March 7th letter to be a binding contract for the purchase and sale of natural gas. It noted the official comment to subsection 204 of West Virginia's Uniform Com mercial Code which states: " '[t]he more terms the parties leave open, the less likely it is that they have intended to conclude a binding agreement.' " W. Va.Code Sec. 46-2-204 cmt. (1993). (J.A. at 3372-73.) The district court considered the terms of the entire agreement and concluded that its plain language reflected the parties' intent to establish conditions precedent to the formation of a binding agreement.
 
 
 7
 Because the parties' intent to form a binding agreement was not expressly stated, the district court employed a multi-factor test to determine whether the facts of this case demonstrated the parties' intent to contract as a matter of law, relying in part on Blair v. Dickinson, 54 S.E.2d 828, 844 (W. Va.), cert. denied sub nom. Gauley-Eagle Coal & Coke Co. v. Blair, 338 U.S. 904 (1949). Because "parol evidence is always admissible to show the nonexistence of a contract or to show the conditions upon which a writing is to become effective as a contract," Miners' and Merchants' Bank v. Gidley, 144 S.E.2d 711, 716 (W. Va.1965), the district court looked to any conduct of the parties that was inconsistent with existence of a binding agreement. The court found that no conduct of either party indicated recognition of a binding contract before Eastern invoiced Falcon for payment under the March 7th letter agreement. Based on the above, the court found that the parties intended confirmation of Falcon's financing and execution of transportation agreements to be conditions precedent to a binding contract.[1]
 
 
 8
 Upon consideration of the record, briefs, and oral argument, we affirm for reasons adequately stated by the district court in its memorandum order, Falcon Seaboard Gas Co. v. Eastern American Energy Corp., Civ. No. 2:92-0782 (S.D. W. Va. March 17, 1994), as incorporated into its judgment order holding that the letter dated March 7, 1991, "does not constitute a final and enforceable agreement for the purchase and sale of natural gas." Falcon Seaboard Gas Co. v. Eastern American Energy Corp., Civ. No. 2:92-0782, slip op. at 2 (S.D. W. Va. April 13, 1994).[2]
 
 
 9
 AFFIRMED.
 
 
 
 [1]
 Eastern argued that East Shepherdstown Dev., Inc. v. J. Russell Fritts, Inc., 398 S.E.2d 517, 520 (W. Va.1990), prevents a court from implying conditions precedent that the parties could have drafted explicitly into their agreement. The district court interpreted East Shepherdstown as barring a court from imposing into a written agreement conditions precedent that are not mentioned in the document but distinguished it from the case at hand because the conditions precedent identified by Falcon were referenced in the March 7th letter
 
 
 [2]
 In view of our disposition of this case, we need not address the now moot issues raised by Eastern on appeal that the district court erred in denying Eastern's motion to file an amended complaint, answer, and counterclaim, and in finding that production of a document during discovery did not waive the attorney/client privilege under West Virginia law