# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**MICHAEL B. WILBER,**
**Defendant Below, Petitioner**

**v.) No. 25-ICA-280**        (Cir. Ct. of Jefferson Cnty. Case No. CC-19-2022-C-97)

**LOCUST HILL UNIT OWNER'S ASSOCIATION, INC.,**
**Plaintiff Below, Respondent**

**FILED**

**June 11, 2026**

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Michael B. Wilber appeals the June 13, 2025, Order on Remand entered by the Circuit Court of Jefferson County in Civil Action No. CC-19-2022-C-97. Mr. Wilber also challenges the circuit court's January 11, 2024, Order Granting Plaintiff's Motion to Dismiss Defendant's Counterclaim; April 18, 2024, Pretrial Conference Order[1]; May 6, 2024, Trial Order; and May 31, 2024, Order Denying Motion to Set Aside Verdict. Respondent Locust Hill Unit Owner's Association, Inc. ("Locust Hill"), filed a response in support of the circuit court's rulings, and Mr. Wilber filed a reply.[2]

This matter previously came before this Court. By Memorandum Decision entered April 29, 2025, in Case No. 24-ICA-270, we remanded the case for entry of findings of fact and conclusions of law pursuant to Rule 52(a) of the West Virginia Rules of Civil Procedure. Following remand, the circuit court entered the June 13, 2025, Order on Remand that is the primary subject of this appeal.

This Court has jurisdiction pursuant to West Virginia Code § 51-11-4 (2022). Having considered the parties' oral and written arguments, the record on appeal, and the applicable

---

[1] The April 18, 2024, Pretrial Conference Order was attached to the notice of appeal but no substantive challenge to this order was presented on appeal. "Although we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal. We deem these errors abandoned because these errors were not fully briefed." *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (2010) (internal citation omitted). Therefore, we consider any argument regarding this order abandoned and waived.

[2] Mr. Wilber is represented by James P. Campbell, Esq., Daniel M. Casto, Esq., and Matthew L. Clark, Esq. Locust Hill is represented by Christopher P. Stroech, Esq., and Elizabeth S. Skilling, Esq.

law, this Court finds that there is error in the circuit court's decision but no substantial question of law. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure for reversal, in part, in a memorandum decision.

We find that the circuit court erred in determining that Mr. Wilber's display constituted a prohibited political campaign sign under Article 10, Section 10.2-1 of the Declaration and Bylaws of Locust Hill. We find no reversible error in the circuit court's use of an advisory jury or its dismissal of Mr. Wilber's counterclaim by order entered January 11, 2024. For the reasons set forth below, the circuit court's orders are affirmed, in part, reversed, in part, and this matter is remanded.

Mr. Wilber owns Lot 407, located at 90 Sawgrass Drive within the Locust Hill subdivision, a common-interest community organized pursuant to the West Virginia Uniform Common Interest Ownership Act as codified in Chapter 36B of the West Virginia Code. As a property owner within the subdivision, Mr. Wilber is a member of respondent Locust Hill Unit Owner's Association, Inc. His property was conveyed subject to the recorded Declaration and Bylaws of Locust Hill, which contain restrictive covenants running with the land.

At issue in this case is Article 10, Section 10.2-1 of the Declaration. That provision states:

> Signs: No sign of any kind shall be erected within the Property without the written consent of the Board of Directors except those signs used in any subsequent sale of the property providing that they do not exceed two square feet. The Board of Directors or Declarant shall have the right to erect signs as they, in their discretion, deem appropriate. Notwithstanding the above, no signs, flags [,] banners or similar items advertising or providing directional information with respect to [t]he activities being conducted outside the Property shall be permitted within the Property and no political campaign signs shall be permitted.

Mr. Wilber displayed, on a flagpole on his property, a flag bearing the phrase "Biden Sucks." He subsequently replaced that with a flag bearing the phrase "Let's Go Brandon." On August 23, 2021, Locust Hill issued a "Friendly Reminder" asserting that the flag violated the covenant in Section 10.2-1 of the Declaration and requested its removal. A "Notice of Continued Violation" followed on September 10, 2021. Locust Hill later issued a demand letter to Mr. Wilber dated December 15, 2021, to remove the flag. No action was taken by Mr. Wilber to remove the flag.

As a result of its unsuccessful attempts to have the flag taken down, Locust Hill filed the underlying civil action on August 9, 2022, seeking injunctive relief to prohibit Mr.

2

Wilber from displaying the flag. Mr. Wilber filed a Rule 12(b)(6) motion to dismiss Locust Hill's complaint which the circuit court denied on September 30, 2022. Locust Hill argued that the display constituted a prohibited political campaign sign under Section 10.2-1 of the Declaration, while Mr. Wilber contended that the display did not violate the covenant because it expressed a political viewpoint but did not advocate for or against any political candidate or campaign.

Mr. Wilber filed an answer that was subsequently amended on August 25, 2023, to assert a counterclaim for breach of contract due to Locust Hill's failure to hold a hearing regarding the alleged violation before commencing litigation as required by the Declaration and to seek attorney fees and costs under West Virginia Code § 36B-3-116(f). In response, Locust Hill filed a motion to dismiss the counterclaim, and both parties filed cross-motions for summary judgment.

On October 31, 2023, the circuit court addressed the parties' cross-motions for summary judgment. During the hearing, the court directed Locust Hill to conduct a hearing regarding Mr. Wilber's alleged covenant violation in accordance with the procedures set forth in the Declaration. The court also discussed with the parties the possibility of utilizing an advisory jury pursuant to Rule 39(c) of the West Virginia Rules of Civil Procedure.

As the court directed, Locust Hill through its Board of Directors held a hearing regarding its notice to remove the flag on November 7, 2023. On January 10, 2024, Locust Hill advised the circuit court that the hearing had been completed and that the Board had unanimously determined, by a vote of three to zero, that Mr. Wilber's display violated Section 10.2-1 and concluded that the display constituted a prohibited political campaign sign under the Declaration.

The circuit court found that the counterclaim was premised upon Locust Hill's alleged failure to hold a Board hearing before pursuing enforcement. Because the Board had conducted a hearing on November 7, 2023, and rendered a decision concerning Mr. Wilber's display, the circuit court concluded that any procedural issue had been cured and that the counterclaim was moot. By order entered January 11, 2024, the circuit court granted Locust Hill's motion to dismiss the counterclaim pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure.

The circuit court further rejected Mr. Wilber's request for attorney fees. The court concluded that West Virginia Code § 36B-3-116(f) was inapplicable because that statute concerns the collection of assessments. The court also considered West Virginia Code § 36B-4-117, which permits an award of attorney fees in appropriate cases where a declarant's failure to comply with its declaration or bylaws adversely affects a person, but determined that fees were not warranted because a Board hearing was not required before litigation commenced, the counterclaim was filed more than one year after the complaint,

and any alleged procedural deficiency had been cured. The circuit court therefore dismissed the counterclaim with prejudice and noted Mr. Wilber's objections.

Mr. Wilber subsequently filed a motion to reconsider or in the alternative alter, vacate, or amend the January 11, 2024, order. The circuit court denied the motion.

Thereafter, the matter proceeded toward trial. Pursuant to Rule 39(c) of the West Virginia Rules of Civil Procedure, the circuit court impaneled an advisory jury. The advisory jury was asked to answer two special interrogatories:

(1) "Is the flag at issue a sign pursuant to the covenants?"; and (if yes to #1)
(2) "Is a 'Let's Go Brandon' flag a political campaign sign prohibited by the covenants?".

During the proceedings, Mr. Wilber argued that the Declaration was unambiguous and that interpretation of its terms presented a threshold question of law for the circuit court. He moved for judgment as a matter of law, and the circuit court denied the motion.

Trial was held on April 24 and 25, 2024. Following voir dire, an advisory jury consisting of six jurors and two alternates was impaneled. Locust Hill presented its case through witnesses and exhibits. Mr. Wilber moved for judgment as a matter of law at the conclusion of Locust Hill's case, which the circuit court denied. He then presented his case through witnesses and exhibits. At the end of his case, Mr. Wilber renewed his motion for judgment as a matter of law, which the circuit court again denied.

Following deliberations, the advisory jury found that the flag constituted a sign and that the "Let's Go Brandon" flag was a prohibited political campaign sign under the Declaration. The circuit court adopted the advisory jury's findings in its May 6, 2024, order. The court ruled in favor of Locust Hill and granted injunctive relief. The circuit court ordered Mr. Wilber to remove the display as violative of the restrictive covenants governing Locust Hill.

Mr. Wilber subsequently filed a motion to set aside the verdict or, in the alternative, for a new trial. The circuit court denied the motion in its May 31, 2024, order. The circuit court reaffirmed its prior rulings, declined to reopen the judgment entered in favor of Locust Hill, and denied the request for a new trial. Mr. Wilber appealed.

In a memorandum decision issued on April 29, 2025, this Court remanded the matter, directing the circuit court to enter a new order addressing key issues and setting forth findings of fact and conclusions of law in accordance with Rule 52(a) of the West Virginia Rules of Civil Procedure.

4

The circuit court entered detailed findings of fact and conclusions of law by order on June 13, 2025. The circuit court concluded that Section 10.2-1 of the Declaration was unambiguous. The circuit court interpreted the phrase "political campaign sign" according to its ordinary meaning regardless of the medium employed and reaffirmed the injunction previously entered against Mr. Wilber. This appeal followed.

We review the orders on appeal under the following standards:

> In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 2, *Walker v. West Virginia Ethics Comm'n*, 201 W. Va. 108, 492 S.E.2d 167 (1997).

> A similar deferential standard applies to our review of permanent injunctive relief.

> In reviewing objections to the findings of fact and conclusions of law supporting the granting or the denial of a temporary or preliminary injunction, we will apply a three-pronged deferential standard of review. We review the final order granting or denying the temporary injunction and the ultimate disposition under an abuse of discretion standard, we review the circuit court's underlying factual findings under a clearly erroneous standard, and we review questions of law de novo.

Syl. Pt. 1, *Bansbach v. Harbin*, 229 W. Va. 287, 728 S.E.2d 533 (2012); s*ee Reilley v. Bd. of Educ. of Cnty. of Marshall*, 246 W. Va. 531, 537, 874 S.E.2d 333, 339 (2022) (applying same standard of review to an award of permanent injunctive relief following a jury trial). With these standards in mind, we turn to Mr. Wilber's assignments of error.

On appeal, Mr. Wilber asserts six assignments of error challenging the circuit court's rulings. We find it appropriate to consolidate and restate those arguments for the purposes of this appeal. *See Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (per curiam) (stating the general proposition that related assignments of error may be consolidated for ruling); *Jacquelyn F. v. Andrea R.*, No. 16-0585, 2017 WL 2608425, at *3 n.2 (W. Va. June 16, 2017) (memorandum decision) (restating assignments of error where they involve clearly related issues). Restated, Mr. Wilber contends that: (1) the circuit court erred in its interpretation and enforcement of Article 10, Section 10.2-1 of the Declaration; (2) the circuit court committed reversible error in connection with the advisory jury proceedings; and (3) the circuit court erred in dismissing Mr. Wilber's counterclaim. We address each argument in turn.

Under the first consolidated assignment of error, Mr. Wilber argues that the circuit court construed the Declaration too broadly. He contends that the court improperly expanded the scope of Section 10.2-1, denied summary judgment based upon an erroneous interpretation of the covenant, and reaffirmed an injunction unsupported by the covenant's plain language. Mr. Wilber further argues that interpretation of the Declaration presented a threshold question of law that should have been resolved by the circuit court rather than submitted, directly or indirectly, to an advisory jury. We agree, in part.

Restrictive covenants are construed according to the intent expressed in the language chosen by the parties. "The fundamental rule in construing covenants and restrictive agreements is that the intention of the parties governs. That intention is gathered from the entire instrument by which the restriction is created, the surrounding circumstances and the objects which the covenant is designed to accomplish." Syl. Pt. 2, *Allemong v. Frendzel*, 178 W. Va. 601, 363 S.E.2d 487 (1987) (quoting *Wallace v. St. Clair*, 147 W. Va. 377, 390, 127 S.E.2d 742, 751 (1962)).

> It is always to be borne in mind that a restriction is in derogation of the common-law right to use land for all lawful purposes which go with the title and possession, and that the restriction is not to be extended by implication, and all doubts are generally to be resolved against its extension. The restrictions cannot be enlarged by implication or extended by construction beyond their original intent in order that the general purpose of the parties may be effectuated under new conditions not to be anticipated.

*Neekamp v. Huntington Chamber of Com.*, 99 W. Va. 388, 129 S.E. 314, 316-317 (1925) (quotation omitted). These principles of settled law control the outcome of this case.

The circuit court ultimately found Section 10.2-1 of the Declaration to be unambiguous. We agree. Where the language of a written instrument is clear and unambiguous, it is applied—not construed.

"A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Syl. Pt. 1, *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W. Va. 484, 128 S.E.2d 626 (1962). "It is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them." *Id*. at 484, 128 S.E.2d at 628, syl. pt. 3. The dispute before us is not what the covenant should have said. The dispute is what it does say.

Section 10.2-1 does not prohibit political speech. It does not prohibit criticism of public officials. It does not prohibit partisan viewpoints. It does not prohibit displays that some residents may regard as offensive, provocative, rude, or unpopular. It prohibits

"political campaign signs." These words matter because the parties' chosen language defines the scope of the restriction. We may not expand that language by implication.

The parties devote substantial attention to whether Mr. Wilber's display should be characterized as a sign, flag, banner, or similar display. That question is ultimately not dispositive. Assuming the flag constituted a sign, Locust Hill is still required to establish that it was a political campaign sign within the meaning of Section 10.2-1 of the Declaration.

The circuit court concluded that the phrase "Let's Go Brandon" constituted a prohibited political campaign sign because it was widely understood as criticism of then-President Joseph Biden. The record supports the circuit court's finding that the phrase carried political significance. But political significance is not the test.

A flag expressing a political viewpoint does not become a political campaign sign unless it advocates the election or defeat of a candidate, promotes a campaign, urges a vote, supports or opposes a ballot measure, or otherwise seeks electoral action. The flag before us does none of those things. The sign mentions no candidate who was on the ballot at that time. It references no campaign or election. It does not request a vote or address a ballot issue. It only expresses a political opinion.[3]

Political commentary and campaign advocacy are not synonymous. Under the plain language of Section 10.2-1, and under the established principle that restrictive covenants may not be enlarged by implication, political commentary is not enough. Locust Hill may prefer a broader restriction. It may wish the Declaration prohibited political displays generally. But that is not the covenant the parties adopted.

The circuit court also relied, in part, upon definitions drawn from North Carolina statutes governing planned communities and condominiums. However, the circuit court's reference to those authorities was unnecessary. The issue before us is resolved by applying settled West Virginia principles governing restrictive covenants and by giving the words chosen by the parties their ordinary meaning.

The practical effect of the circuit court's interpretation was to convert a prohibition against political campaign signs into a prohibition against political expression generally. Section 10.2-1 does not support that expansion.

---

[3] We are not convinced by Locust Hill's argument that Mr. Wilber's sign was a political campaign sign because one of the candidates refused to concede the election. Regardless of whether one of the candidates conceded the election, the election had concluded, and no further votes could be cast at the time. Accordingly, the proposition that the sign discouraged voters to vote for a candidate is untenable.

Our conclusion is consistent with the settled principle that restrictive covenants must provide fair notice of the conduct they prohibit. A property owner reading Section 10.2-1 would reasonably understand that the covenant prohibits displays advocating electoral outcomes. Nothing in the language of the Declaration would place an owner on notice that expressions of political opinion untethered to any campaign, election, candidate, or ballot measure are likewise prohibited.

Had the drafters intended to prohibit political signs generally, they could have done so. They did not. Instead, they selected the narrower phrase "political campaign signs." Homeowners associations and courts are not free to rewrite restrictive covenants to accomplish objectives broader than those reflected in the language chosen by the parties.[4]

Because the flag at issue does not advocate the election or defeat of a candidate, urge electoral action, or otherwise constitute campaign advocacy, it falls outside the scope of the restriction as written.

Our holding is narrow. We do not hold that Locust Hill lacks authority to regulate signs or political displays. Nor do we hold that the phrase at issue could never violate a differently worded covenant. We hold only that this Declaration, as written, does not clearly prohibit Mr. Wilber's flag. The Declaration says what it says. It prohibits political campaign signs. It does not prohibit political speech generally. Mr. Wilber's flag was political. It was not a political campaign sign. Accordingly, the circuit court erred in reaffirming the injunction.

We do not agree, however, with Mr. Wilber's argument that the circuit court failed to comply with this Court's remand directive. The June 13, 2025, Order on Remand contains detailed findings of fact and conclusions of law sufficient to satisfy Rule 52(a) of the West Virginia Rules of Civil Procedure. Although we disagree with the circuit court's legal conclusion, the court complied with the remand order.

Mr. Wilber next argues that the circuit court committed reversible error by utilizing an advisory jury. He contends that because Section 10.2-1 ultimately presented a question of law, the circuit court should not have submitted related issues to an advisory jury. We disagree.

---

[4] Section 14.1 of the Declaration permits amendment upon the approval of sixty-seven percent (67%) of the Unit Owners. *See also* W. Va. Code § 36B-2-117(a) (authorizing amendment of a declaration by the affirmative vote or agreement of unit owners holding at least sixty-seven percent (67%) of the votes in the association, unless a different percentage is required by the declaration). Accordingly, while the Court interprets and applies the Declaration as it presently exists, this Decision does not preclude the Unit Owners from pursuing any amendment authorized by Section 14.1 of the Declaration and West Virginia Code § 36B-2-117(a).

Rule 39(c) of the West Virginia Rules of Civil Procedure expressly authorizes a circuit court to utilize an advisory jury in actions not triable of right by a jury. An advisory jury advises; it does not decide. The ultimate responsibility for findings of fact and conclusions of law remains with the trial court.

The record reflects that the circuit court utilized the advisory jury to address factual questions concerning the nature and meaning of the challenged display. Following voir dire, the circuit court impaneled an advisory jury consisting of six jurors and two alternates. The parties presented witnesses, exhibits, objections, and arguments. Mr. Wilber moved for judgment as a matter of law at the close of Locust Hill's evidence and renewed that motion after presenting his own evidence. Both motions were denied. The advisory jury ultimately answered both interrogatories in favor of Locust Hill.

Nothing in the record suggests that the circuit court misunderstood the advisory nature of the jury's role or improperly delegated its judicial responsibilities. The circuit court maintained its judicial responsibility by ultimately making its own independent determination. The advisory jury's role was to provide community perspective. *See E. Shepherdstown Developers, Inc. v. J. Russell Fritts, Inc.*, 183 W. Va. 691, 694, 398 S.E.2d 517, 520 (1990) ("An advisory jury is just that, *advisory*.") (emphasis in the original).

Further, while Mr. Wilber consistently maintained that interpretation of Section 10.2-1 presented a question of law, the record does not demonstrate that Mr. Wilber objected to the circuit court's authority to impanel an advisory jury under Rule 39(c).[5]

Because Rule 39(c) authorized the procedure employed by the circuit court, and because the record discloses no abuse of discretion in the manner in which the advisory jury was utilized, we affirm the circuit court's rulings concerning the advisory jury proceedings.

Mr. Wilber next argues that the circuit court erred in dismissing his counterclaim for attorney fees and related relief. He contends that Locust Hill failed to comply with the governing Declaration and bylaws before commencing litigation and that, as a result, he was entitled to relief on his counterclaim. We disagree.

Mr. Wilber's counterclaim is premised upon Locust Hill's alleged failure to conduct a Board hearing before pursuing enforcement of the Declaration. However, after the circuit court directed Locust Hill to conduct such a hearing, the Board convened on November 7, 2023, and unanimously determined that Mr. Wilber's flag violated Section 10.2-1. By order

---

[5] Additionally, Mr. Wilber created a question of fact for the lower court when he claimed that the meaning of the flag was to support his good friend, Brandon, as opposed to the meaning Locust Hill ascribed to the flag.

entered January 11, 2024, the circuit court concluded that any alleged procedural deficiency had been cured and that the counterclaim was therefore moot.

We find no reversible error in that ruling. Even assuming the governing Declaration and bylaws contemplated a Board hearing before commencing litigation, the hearing was ultimately held, the Board rendered a decision, and Mr. Wilber has identified no remaining live controversy arising solely from the timing of the hearing. Additionally, Mr. Wilber points to no portion of the Declaration authorizing damages for such alleged breach.

Nor did the circuit court err in denying Mr. Wilber's request for attorney fees. Mr. Wilber relied upon West Virginia Code § 36B-3-116(f), but that statute concerns the collection of assessments and does not provide a basis for attorney fees under the circumstances presented. The circuit court also considered West Virginia Code § 36B-4-117, which permits an award of reasonable attorney fees in an appropriate case. That statute is discretionary rather than mandatory.

Given the circuit court's findings that a Board hearing was not required before litigation commenced, that the counterclaim was filed more than one year after the complaint, and that any alleged procedural deficiency had been cured, the circuit court did not abuse its discretion in declining to award attorney fees.

Accordingly, the circuit court did not err in dismissing the counterclaim with prejudice, and we affirm the January 11, 2024, Order Granting Plaintiff's Motion to Dismiss Defendant's Counterclaim.

For the foregoing reasons, we affirm the circuit court's January 11, 2024, Order Granting Plaintiff's Motion to Dismiss Defendant's Counterclaim and the circuit court's rulings concerning the advisory jury proceedings. We reverse the circuit court's determination that Mr. Wilber's flag violated Article 10, Section 10.2-1 of the Declaration and reverse the injunction entered pursuant thereto.[6] This matter is remanded for entry of an order consistent with this decision and for such further proceedings as may be necessary.

Affirmed, in part, Reversed, in part, and Remanded.

**ISSUED:** June 11, 2026

**CONCURRED IN BY:**

---

[6] Considering our determination that the circuit court erred in its interpretation of Section 10.2-1 and reversal of the judgment below, the remaining assignments of error no longer present issues necessary to the disposition of this appeal and are moot.

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White